Kelly **KOERNER**, Petitioner–Appellant,

v.

George A. **GRIGAS**, Respondent–Appellee.

No. 01–15345.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 2002.

Filed April 28, 2003.

Kelly Koerner, Petitioner–Appellant, Carson City, NV, appearing pro se.

David K. Neidert, Deputy Attorney General, Carson City, NV, for Respondent–Appellee.

Before D.W. NELSON, BEEZER and McLANE WARDLAW, Circuit Judges.

Opinion by Judge D.W. NELSON; Dissent by Judge BEEZER.

## OPINION

D.W. NELSON, Senior Circuit Judge.

Petitioner Kelly Koerner ("Koerner"), a Nevada prisoner serving a sentence of life imprisonment without the possibility of parole, appeals the district court's dismissal of his petition for writ of habeas corpus under 28 U.S.C. § 2254. On appeal, Koerner has pursued only his claim that he was denied a direct appeal from his original conviction. The district court dismissed this claim as procedurally defaulted because it found that the Nevada Supreme Court had relied on an independent and adequate state procedural ground in denying the claim. Finding that our analysis is controlled by a recent en banc decision of this Court, we reverse, holding that the Nevada Supreme Court did not rely on an independent and adequate state ground and that Koerner's denial of direct appeal claim is therefore not procedurally defaulted.

### FACTUAL AND PROCEDURAL BACKGROUND

Kelly Koerner is guilty of a brutal murder. He does not now claim innocence, and has not done so since pleading guilty. He does, however, raise questions about the fairness of the process by which he came to be imprisoned for the rest of his life, and the possible denial of rights that

our Constitution extends even to the guilty.

On August 22, 1986, Kelly Koerner pled guilty to the murder of his ex-wife, Christie Koerner, in Reno, Nevada. Following a messy divorce, Koerner had purchased a handgun, and on April 28, 1986, he found his ex-wife as she was leaving her psychotherapist appointment and shot her five times in the head. Koerner told the state trial judge:

> My statement, as simply and succinctly as I can put it, is that I was in Washoe County on that date, I was the one that held the gun, that shot Christie Koerner, and consequently she died because of it, and I am willing to plead guilty to the elements of murder one at this time.

Following his guilty plea to first degree murder, Koerner was sentenced to life without the possibility of parole—the maximum sentence available.

Koerner did not file a direct appeal within the applicable time limits. He ultimately attempted to appeal his conviction in August of 1996; the appeal was dismissed as untimely.

Koerner also pursued post-conviction relief in the Nevada courts, filing three successive petitions for relief. He filed the first petition on March 2, 1987, proceeding without counsel. In Grounds Four and Six, Koerner raised ineffective assistance of counsel claims; by way of explanation for why he had not raised any claims on direct appeal, he stated that "[a] direct appeal was not pursued due to the petitioners[sic] ignorance of the law and judicial process." Koerner was represented by appointed counsel at the hearing on the first petition, and testified that he only learned of the value of a direct appeal after discussing the matter with his fellow inmates. The petition was denied by the Nevada district court on February 3, 1988. The Nevada Supreme Court dismissed Koerner's appeal from the denial of the first petition on December 29, 1988, in a brief order that did not discuss the merits of his claims.

Koerner filed a second state post-conviction petition on May 25, 1988. In a supplement to that petition, Koerner alleged that his appointed post-conviction counsel had been ineffective in failing to raise the loss of his direct appeal in his first petition, and requested that the court "allow ... the exhaustion of the issue of why no direct appeal was taken." He presented a letter he had written to his appointed counsel, in which he related that his trial counsel had told him that a direct appeal would be worthless and a waste of their time. The Nevada district court dismissed the petition in a brief order filed January 2, 1990, and the Nevada Supreme Court dismissed Koerner's appeal on March 27, 1990. The order dismissing the appeal contains no discussion of Koerner's claims.

On July 7, 1993,[1] Koerner filed a third state petition, a petition for a writ of habeas corpus.[2] In Ground Five of that

---

1. There is some dispute over when Koerner's third petition actually was filed. Koerner produced evidence demonstrating that he had deposited his petition with the prison mailroom on December 24, 1992. The Nevada district court apparently did not receive this petition, and Koerner re-sent the petition in June of 1992. Nonetheless, because Nevada does not recognize a "prison mailbox rule" for post-conviction petitions, *see Gonzales v. State*, 53 P.3d 901, 903–04 (Nev.2002) (en banc) (per curiam), Koerner's third petition was not filed under Nevada law until actually received by the clerk of court.

2. Koerner's first two petitions were petitions for post-conviction relief, not petitions for habeas corpus. At the time, Nevada law allowed both a petition for post-conviction relief under former Nevada Revised Statutes chapter 177, and a petition for writ of habeas corpus under Nevada Revised Statutes chapter 34. The statutory provisions allowing a petition for post-conviction relief have since

petition, he stated, "Public Defender attorneys failed to notify me or advise me of direct appeal rights and failed to file Notice of Appeal." The Nevada district court summarily dismissed the petition, finding that "this is a successive petition," and that, with one exception not relevant here, "there is *absolutely nothing* in the current Petition or its exhibits which has not already been addressed and considered twice previously." In an unpublished order filed November 24, 1993, the Nevada Supreme Court affirmed the denial of the petition. The court described the issues raised in the petition as follows:

> In his petition, appellant argued the following: (1) he was improperly canvassed; (2) he did not know the elements of the offense or the consequences of the guilty plea; (3) his "firm denial of elements and involuntariness required the court to end the hearing and order a trial to be held on the charge"; (4) his attorney misinformed appellant as to the true consequences of a guilty plea and failed to investigate defenses; and (5) his plea was involuntary because of pressure, duress, threats and coercion.

The Nevada Supreme Court's order included one short paragraph analyzing the law supporting the denial of the petition:

> A second or successive petition challenging the validity of a judgment of conviction must be summarily dismissed if it plainly appears from the face of the petition, the documents and exhibits annexed to the petition, and the records of the court that the petitioner is not entitled to relief. [Nev.Rev.Stat. § ] 34.745(3). The district court did not err in summarily dismissing appellant's third petition. Appellant's petition raised claims which have either been

been repealed. *See Pellegrini v. State,* 117 Nev. 860, 34 P.3d 519, 527–28 (Nev.2001) (en

rejected on their merits in decisions involving appellant's two prior post-conviction petitions or claims which could have been raised in the prior petitions. Appellant is procedurally barred from raising these claims in the instant petition. [Nev.Rev.Stat. § ] 34.810; *Washington v. State,* 104 Nev. 309, 756 P.2d 1191 (1988).

The Nevada Supreme Court did not mention Koerner's claim that he had been denied the right to a direct appeal.

On April 11, 1997, Koerner filed the instant petition for writ of habeas corpus in federal district court for the district of Nevada. This petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA")—in which Congress greatly restricted the constitutional right to habeas corpus relief—because it was filed after AEDPA's effective date of April 24, 1996.

Ground Five of the federal petition alleged that Koerner's counsel had denied him the right to a direct appeal. The district court held, in an unpublished Memorandum Decision and Order entered April 29, 1999, that Ground Five was procedurally defaulted. The district court found that Ground Five was exhausted because Koerner had raised it in his third post-conviction petition, but noted that "[t]he[Nevada] district court found the petition procedurally defaulted pursuant to Nev.Rev.Stat. § 34.745(3)," and that "[t]he Nevada Supreme Court affirmed the district court's decision in denying Koerner's appeal."

Koerner filed a notice of appeal pro se, requesting leave to proceed *in forma pauperis* and the appointment of counsel.

banc) (per curiam).

Pursuant to the AEDPA requirement that a certificate of appealability ("COA") be granted before any habeas appeal may be entertained, *see* 28 U.S.C. § 2253(c), this Court granted a COA as to two issues:

1. Did the district court err in dismissing as procedurally barred the claim of ineffective assistance of counsel in failing to perfect an appeal because Koerner fairly presented the claim on his first and second state court petitions?

2. Was the guilty plea involuntary because his attorney misled him about the direct consequences of a sentence of life without the possibility of parole?

Koerner was granted leave to proceed *in forma pauperis* and appellate counsel was appointed to represent him.

Koerner's appellate counsel filed briefs discussing both issues on which the COA had been granted. As to the failure to file a direct appeal, appellate counsel argued that the claim had been raised in Koerner's first and second state post-conviction petitions or, alternatively, that Koerner had shown cause for and prejudice from the procedural default.

After the opening brief was filed, this Court was made aware of disagreements between Koerner and his appointed appellate counsel. Although appellate counsel argued the involuntary guilty plea claim in the opening brief, the reply brief noted that Koerner had directed his counsel to abandon this claim, and expressly stated that he had done so "against the advice of counsel." On August 28, 2002, appellate counsel filed a Motion for Submission of Case on the Briefs, a motion that, if granted, would have disposed of oral argument for this appeal. On September 3, 2002, Koerner notified the Court that he was terminating representation by his appointed counsel; he attached a letter to his counsel indicating that he had not been notified that oral argument had been

scheduled, and stating that the decision to submit the case on the briefs was unacceptable. On September 6, 2002, Koerner filed pro se an Opposition to Motion for Submission of Case on the Briefs, opposing the motion made by his own lawyer. In this pleading, Koerner wrote that he believed that he had a better working knowledge of Nevada procedural law than his appointed counsel, and requested that he be allowed to argue the case himself.

On September 17, 2002, this Court acknowledged Koerner's termination of his appointed counsel and granted Koerner's request to argue his case pro se. On October 2, 2002, a few days before argument, Koerner filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) to draw the panel's attention to *Valerio v. Crawford,* 306 F.3d 742 (9th Cir.2002), *cert. denied sub nom. McDaniel v. Valerio,* 123 S.Ct. 1788, 71 U.S.L.W. 3531 (U.S. Apr. 21, 2003), decided by an en banc panel of this Court on September 17, 2002. Koerner argued the case himself by telephone, and much of the argument by both parties focused on the applicability of *Valerio* to the instant case. Specifically, Koerner argued that the Nevada Supreme Court's dismissal of his third habeas petition was too ambiguous to determine whether the Nevada courts had rejected his denial of direct appeal claim on the basis of an adequate and independent state ground that would bar federal review, one of the issues addressed directly by *Valerio.*

## JURISDICTION AND STANDARD OF REVIEW

■ Koerner's federal habeas petition was filed pursuant to 28 U.S.C. § 2254. We have jurisdiction to review the district court's denial of such a petition under 28 U.S.C. § 2253. We review the district court's decision de novo. *Dubria v. Smith,* 224 F.3d 995, 1000 (9th Cir.2000) (en banc),

cert. denied, 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2001).

## DISCUSSION

■ Valerio v. Crawford directly controls the resolution of this case. The Nevada Supreme Court's dismissal of Koerner's third petition is indistinguishable from the dismissal at issue in Valerio, which was held to be too ambiguous to constitute an adequate procedural bar. We therefore hold that Koerner's claim that his attorneys failed to file a direct appeal is not procedurally defaulted; even if we disagreed with Valerio, this panel lacks the authority to depart from the holding of an en banc opinion.

Before reaching the grounds on which Valerio applies, however, we must determine whether other arguments advanced by Koerner are meritorious, and whether we may reverse the district court on the basis of an argument not made in the briefs filed by Koerner's former appellate counsel.

### I. Requirements for federal habeas review.

■ Generally, for Koerner's claims to be reviewed by a federal habeas court, they must have been exhausted and not procedurally barred. To satisfy the exhaustion requirement, the claim must have been presented previously to the Nevada Supreme Court, "includ[ing] reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162–63, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). "[E]xhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (alteration and internal quotation marks omitted). Fair presentation requires that the petitioner must present "both the operative facts and the federal legal theory on which his claim is based" to the state court. Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir.2003).

■ Even if Koerner's claims have been fairly presented to the Nevada Supreme Court, however, federal courts may not review them if the Nevada Supreme Court denied relief on the basis of "independent and adequate state procedural grounds." Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). This rule works in tandem with the exhaustion requirement, to ensure that state prisoners cannot subvert the exhaustion requirement by presenting their claims to the state court in a procedurally deficient manner:

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

Id. at 732, 111 S.Ct. 2546. If his claims are procedurally defaulted pursuant to an independent and adequate state rule, Koerner can only seek federal habeas review of those claims if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750, 111 S.Ct. 2546. Pursuant to these rules, the district court found that Koerner's claim for the denial of a direct appeal had not been exhausted by his first two state post-conviction petitions, but had been exhausted by the third petition.

Nonetheless, the district court held, the Nevada courts had dismissed the claim on the basis of an adequate and independent state procedural ground, and Koerner could not demonstrate cause and prejudice.

## II. *Koerner's first two state post-conviction petitions.*

The briefs filed by Koerner's former appellate counsel argue that each of the first and second state post-conviction petitions adequately raised the issue that Koerner was denied a direct appeal due to the ineffective assistance of his counsel. Although we recognize that the Nevada courts did have the power to rule on this issue, we conclude that the references to the denial of a direct appeal in the first two post-conviction petitions were not sufficiently clear to "fairly present" the issue.

The Nevada Supreme Court has long regarded as well established its power to consider constitutional errors *sua sponte,* even when not properly raised by the parties. *See, e.g., Pellegrini v. State,* 117 Nev. 860, 34 P.3d 519, 533 (2001) (en banc) (per curiam) ("[T]he power of this court to address plain error or issues of constitutional dimension *sua sponte* is well established."); *see also Kirkpatrick v. Eighth Judicial Dist. Court,* 64 P.3d 1056, 2003 WL 1192883, at *7 n. 8 (Nev.2003) (noting that the rule that issues not raised before that district court are waived on appeal yields to the rule that the court may consider constitutional issues *sua sponte* ); *McNair v. Rivera,* 110 Nev. 463, 874 P.2d 1240, 1244 n. 6 (1994) (per curiam); *Emmons v. State,* 107 Nev. 53, 807 P.2d 718, 723 (1991) (holding that "we may address plain error or issues of constitutional dimension *sua sponte* "), *abrogated on other grounds by Harte v. State,* 116 Nev. 1054, 13 P.3d 420, 432 n. 6 (2000) (en banc) (per curiam); *McCullough v. State,* 99 Nev. 72, 657 P.2d 1157, 1158 (1983) (per curiam). Ineffective assistance of counsel is quite obviously an issue of constitutional dimension, and therefore the Nevada Supreme Court had the power to consider at any time Koerner's claim that his trial counsel failed to file a direct appeal.

Nonetheless, we cannot assume that the Nevada Supreme Court did in fact consider any claim that it had the power to decide; we must still inquire as to whether Koerner fairly presented the direct appeal claim. We find that he did not.

■ In the first petition, the denial of a direct appeal appears nowhere in Koerner's statement of claims; it is mentioned only by way of explanation as to why he did not previously raise his other claims on direct appeal. At the evidentiary hearing, Koerner also described the facts underlying his direct appeal claim, and in his petition, he raised ineffective assistance of counsel claims. Ordinarily, the presentation of these facts along with ineffective assistance claims might be enough to put the reviewing court "on notice" that Koerner was raising an ineffective assistance claim for failing to file a direct appeal. *See Wells v. Maass,* 28 F.3d 1005, 1008 (9th Cir.1994). In this case, however, because these facts also were relevant to show why Koerner's other claims should not be defaulted for failing to raise them on direct appeal, we cannot say that the first petition fairly presented the claim for the denial of a direct appeal.

■ In the supplement to the second petition, Koerner asserted that his first post-conviction counsel had been ineffective for failing to assert a claim for the denial of a direct appeal. This supplement specifically requested that the court "allow ... the exhaustion of the issue of why no direct appeal was taken." The use of the term "exhaustion" indicates that Koerner wanted the court to address the merits of his direct appeal issue. Furthermore, Koerner attached a letter that set forth

the "operative facts" underlying this claim, and raised the "federal legal theory" of ineffective assistance of counsel throughout the supplement. *See Kelly,* 315 F.3d at 1066.

If this were the last mention of this claim in the record, we very well might conclude that it had been fairly presented to the Nevada courts. A few months after filing this supplement, however, Koerner filed a Motion for Adjudication in which he requested that the Nevada district court decide the merits of his second post-conviction petition. In that motion, Koerner asserted that the only issue raised by his second petition was "if Mr. Specchio [Koerner's post-conviction counsel] was ineffective." He further argued that it was not his choice to "have Mr. Specchio put up such a weak argument as to why Petitioner did not file a direct appeal in this matter, that the Nevada Supreme Court did not even recognize such an argument and dismissed Petitioner's appeal accordingly." Thus Koerner's Motion for Adjudication characterized this claim as challenging only the effectiveness of his post-conviction counsel, not his trial counsel. The issue of the effectiveness of Koerner's trial counsel in failing to file a direct appeal was thus not fairly presented to the Nevada courts. Furthermore, the second petition was dismissed in an order that failed to mention the direct appeal issue at all, and so the record on the second petition does not allow for the conclusion that the Nevada courts actually considered this issue. As noted above, however, the Nevada Supreme Court certainly had the power to consider the issue *sua sponte,* and the record before the Nevada Supreme Court on the second petition contained substantial factual development on this issue.

### III. The third state petition.

There is no question that Koerner raised the issue of the ineffectiveness of his trial counsel in failing to file a direct appeal in his third state petition. In his reply brief to this Court, Koerner's former appellate counsel advanced two arguments as to why the Nevada Supreme Court's denial of this petition does not bar litigation of the issue in federal court: first, that the Nevada courts' orders demonstrate that the issue was raised in the previous two petitions, and second, that Koerner has shown cause and prejudice to avoid any apparent procedural default. Koerner himself supplemented the former argument by drawing our attention, in his Rule 28(j) letter and at oral argument, to *Valerio v. Crawford.* We find that we need not reach the question of cause and prejudice, because we find that the Nevada Supreme Court's order is ambiguous as to whether the issue was litigated in the first two petitions or was procedurally barred.

### A. Whether Koerner has waived his *Valerio argument.*

 Before we turn to the applicability of *Valerio* to the situation presented here, we address the question of whether any argument based on *Valerio* has been waived because it was not raised in the opening brief filed by Koerner's former appellate counsel. In general, "[w]e 'will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.'" *United States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992) (quoting *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 738 (9th Cir. 1986)). Nonetheless,

[t]hree main exceptions to that rule exist. First, we will review an issue not present in an opening brief for "good cause shown", Fed. R.App. P. 2, or "if a failure to do so would result in manifest injustice." *United States v. Loya,* 807 F.2d 1483, 1487 (9th Cir.1987). Second, "[w]e have discretion to review an issue not raised by appellant ... when it is raised in the appellee's brief." *In re*

*Riverside–Linden Investment Co.,* 945 F.2d 320, 324 (9th Cir.1991). Third, we may review an issue if the failure to raise the issue properly did not prejudice the defense of the opposing party. *Id.* at 514 (second alteration in original). We find that, in this case, good cause is evident. The record reveals a breakdown in communication, and disagreements as to what arguments should be advanced, between Koerner and his appointed appellate counsel. Shortly after terminating representation by his counsel, Koerner alerted us to the applicability of *Valerio,* and focused on it in his oral argument. It is apparent that, had Koerner been representing himself, he likely would have made this argument from the outset.

■ To hold that Koerner has waived this argument would place an unrepresented habeas petitioner in an extremely difficult position, especially if, as is often the case, such petitioner has some knowledge of the pertinent legal issues in his or her case. An indigent habeas petitioner has the option of requesting the appointment of counsel to assist in his or her case. If such counsel could waive irrevocably a client's arguments—even after counsel is terminated and even when the argument is raised by the petitioner him or herself—the petitioner would be taking a great risk in requesting the appointment of counsel. We find that the imposition of that risk is inconsistent with the policy underlying the rules allowing for the appointment of counsel. Under the narrow circumstances presented here, where the petitioner has terminated his appointed counsel and subsequently made additional arguments himself, we hold that

this Court may exercise its discretion to consider such arguments.[3]

**B. Applicability of Valerio.**

■ Turning to the merits, we find that *Valerio v. Crawford* squarely controls this case. In *Valerio,* an en banc panel of this Court reviewed the district court's rejection of several habeas claims as procedurally defaulted. *See* 306 F.3d at 771–75. The Nevada district court had determined that eighteen of the petitioner's claims had been raised before and could not be relitigated pursuant to Nevada Revised Statutes § 34.810. *Id.* at 771–72. The Nevada Supreme Court determined that only some of these eighteen claims had been litigated previously, but determined that dismissal was proper because the other claims could have been raised previously and were procedurally barred. *Id.* at 772. The en banc court held that, because it failed "to specify which claims were barred for which reasons, the Nevada Supreme Court 'did not clearly and expressly rely on an independent and adequate state ground.'" *Id.* at 775 (quoting *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546). Accordingly, none of the eighteen claims could be held to be procedurally defaulted. *Id.*

The factual parallels between the two cases are remarkable. As in *Valerio,* the Nevada district court here determined that the issues raised in Koerner's petition already had been raised in prior petitions. As in *Valerio,* the Nevada Supreme Court here did not agree entirely with the district court, but held that Koerner's claims either had been raised previously or, if

---

**3.** We also note that this argument is encompassed by the certificate of appealability granted in this case; the COA allows consideration of whether Koerner's claim that his trial counsel failed to file a direct appeal is procedurally barred. Although the COA only mentions the argument that the first and sec-

ond state post-conviction petitions fairly presented this claim, "it is not arguments that are certified, it is issues and claims. In [Koerner's] case, the issue or claim certified is whether" his claim is procedurally barred. *Tillema v. Long,* 253 F.3d 494, 502 n. 11 (9th Cir.2001).

they had not been raised previously, were now procedurally defaulted under Nevada Revised Statutes § 34.810. As in *Valerio,* it is impossible to tell from the Nevada Supreme Court's opinion here which issues were barred as previously litigated, and which were barred as procedurally defaulted. We need not expand the rule of *Valerio* to hold that Koerner's case falls within it. "By failing to specify which claims were barred for which reasons, the Nevada Supreme Court 'did not clearly and expressly rely on an independent and adequate state ground.'" *Valerio,* 306 F.3d at 774–75 (quoting *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546). Koerner's direct appeal claim is not procedurally defaulted.

### C. Our duty to follow Valerio.

Ordinarily, our analysis would end here. The facts of this case are indistinguishable from those underlying a recent en banc decision of this Court, and there has been no intervening Supreme Court decision to undercut the controlling nature of this decision. Our dissenting colleague, however, suggests both that *Valerio* is in direct conflict with Supreme Court caselaw and that *Valerio* is distinguishable from this case. Because we believe that we cannot ignore *Valerio,* that the principle underlying the holding of *Valerio* is consistent with Supreme Court caselaw, and that no exception to this holding is applicable here, we are compelled to answer the arguments made by the dissent.

We begin by stating the long-standing principle that, "as a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel. An exception to this rule arises when an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point." *United States v. Gay,* 967 F.2d 322, 327 (9th Cir.1992) (citations and internal quotation marks omitted).

" '[I]n the absence of intervening Supreme Court precedent, one panel cannot overturn another panel, regardless of how wrong the earlier panel decision may seem to be.' " *Hart v. Massanari,* 266 F.3d 1155, 1171–72 (9th Cir.2001) (quoting *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 425–26 (5th Cir.1987)). Thus, even if we agreed that *Valerio* contravenes Supreme Court precedent, we would still be bound to follow it.

Nonetheless, if we were to determine that our interpretation of *Valerio* is in conflict with Supreme Court precedent, we would examine any possible alternative interpretations that would be consistent with the high Court's caselaw. We therefore consider whether our application of *Valerio* may be reconciled with *Coleman v. Thompson* and other relevant cases.

Although the Supreme Court has long applied the independent and adequate state grounds doctrine in habeas cases, *see, e.g., Wainwright v. Sykes,* 433 U.S. 72, 87–88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the seminal case regarding the resolution of ambiguous state rulings is *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In *Harris,* the petitioner had applied for post-conviction relief from the Illinois state courts. *Id.* at 257, 109 S.Ct. 1038. An Illinois court dismissed his petition, stating that the petitioner's claims were waived because they could have been presented earlier but had not been, but also considering and rejecting the merits of an ineffective assistance of counsel claim. *Id.* at 258, 109 S.Ct. 1038. The Supreme Court found that the Illinois court's ruling did not constitute independent and adequate state grounds with respect to the ineffective assistance claim, holding that "a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the

case clearly and expressly states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. 1038 (internal quotation marks omitted). As the Supreme Court later explained,

> After *Harris,* federal courts on habeas corpus review of state prisoner claims ... will presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion."

*Coleman,* 501 U.S. at 734–35, 111 S.Ct. 2546 (quoting *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).

In *Coleman,* however, the Court limited this presumption. There, the habeas petitioner had filed a state post-conviction petition, and upon its denial he had appealed to the Virginia Supreme Court. Virginia had moved to dismiss the appeal as untimely, and the Virginia Supreme Court, with explicit references to the motion to dismiss, issued an order stating that "the motion to dismiss is granted." *Id.* at 727–28, 111 S.Ct. 2546. The petitioner argued that because the Virginia Supreme Court's order did not "clearly and expressly" identify the state procedural rule in dismissing the appeal, the *Harris* presumption required a finding that the Virginia court did not rely on independent and adequate state grounds. *Id.* at 735–36, 111 S.Ct. 2546. The Supreme Court rejected this argument, finding that the *Harris* presumption does not apply "in those cases where the relevant state court decision does not fairly appear to rest primarily on federal law or to be interwoven with such law." *Id.* at 740, 111 S.Ct. 2546. Instead, in such cases, "federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judg-

ment that rests on independent and adequate state grounds." *Id.* at 736, 111 S.Ct. 2546. This inquiry was not difficult in *Coleman;* in fact, the petitioner "concede[d] that the Virginia Supreme Court dismissed his state habeas appeal as untimely, applying a state procedural rule." *Id.* at 740, 111 S.Ct. 2546.

■ *Coleman* gives little guidance on the proper approach to state court decisions that do not rely on federal law grounds, but for which the applicable state law ground is ambiguous or unclear. Under the facts of *Coleman,* the Court did not need to consider this issue, because the petitioner had conceded that the state court had applied a particular state procedural rule. All that *Coleman* teaches is that no presumption applies where no federal law basis for the decision is evident, and that the federal courts must make their own inquiry.

Against this backdrop we find *Calderon v. United States District Court (Bean),* 96 F.3d 1126 (9th Cir.1996), the case upon which *Valerio* relies. In *Bean,* the panel considered whether a denial of a state post-conviction petition by the California Supreme Court barred federal habeas relief. *Id.* at 1129. With respect to thirty-nine of the petitioner's claims, the California court held that they were "procedurally barred in that they were or could have been, but were not, raised on appeal or were waived by failure to preserve them at trial." *Id.* at 1128. In the face of this ambiguity, the panel did not apply the *Harris* presumption that the decision rested on federal law grounds; such a rule would contravene the express holding of *Coleman.* Instead, the panel considered the adequacy of the state law grounds at issue. *Id.* at 1129. One of the grounds relied upon—that the issues actually were raised on appeal—would not bar federal review. *Id.* at 1131. The other ground—

that the issues were not raised on appeal and therefore were waived—likely would bar federal review. *Id.* Finding that "the California Supreme Court's order provides no basis upon which to apply" the latter ground, the panel determined that it was too "ambiguous" to bar federal review. *Id.*

■ Neither *Bean* nor *Valerio* impermissibly applies the *Harris* presumption where no federal law ground is evident. Instead, both cases stand for the proposition that where a state court decision affords no basis for choosing between a state law ground that would bar federal review, and one that would not, that decision cannot bar federal review. *Coleman* instructs federal courts to "ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds." 501 U.S. at 736, 111 S.Ct. 2546. But if it is impossible for the federal court to ascertain whether such grounds have been relied upon, the state court decision cannot bar federal review.

The dissent suggests that such an unresolvable ambiguity exists only where, after reviewing the record, the federal court cannot guess at which grounds might be applicable to which claims. We think this formulation is overstated. Under some circumstances, a federal court will be able to resolve an ambiguous order. For example, if the order affirms a previous lower court order that relies on the same grounds and specifies which grounds are applicable to which claims, there is no reason to assume that the appellate court applied different grounds to different claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). But where a state supreme court order expressly relies on different grounds than the lower court decision that it affirms, yet fails to explain which ground applies to which claim—as in both *Valerio* and the instant case—federal courts generally will not be able to resolve the resulting ambiguity.

Even if we were to attempt to usurp the role of the state courts and determine which state law rules apply to which claims, we could not do so in this case. As noted above, although Koerner's claim that he was denied a direct appeal was not fairly presented in either of his first two state post-conviction petitions, both petitions—and especially the second petition—raised the facts necessary to bring this issue to the attention of the Nevada courts. Furthermore, the Nevada courts have the discretion to address constitutional issues *sua sponte*. The orders of the Nevada courts are not sufficiently detailed to allow a determination of whether, in fact, the direct appeal claim was ever considered on the merits, but we are satisfied that it *could* have been.

When a claim could have been considered on the merits in an earlier proceeding, and one of the bases for the denial of the claim in a later proceeding is that the claim was in fact litigated previously, we cannot reject this possibility. None of the Nevada court decisions mentions the failure of Koerner's trial counsel to file a direct appeal. This is the case even in the Nevada Supreme Court's order dismissing the third petition; even though the claim was raised expressly in the third petition, the portion of the order that appears to catalog the claims raised in the petition omits any mention of this claim. We thus have no more basis for concluding that the order dismissing the third petition grouped this claim among those that were procedurally defaulted than for concluding that the orders dismissing the first and second

petitions considered the claim on the merits.

Finally, we note another relevant aspect of *Bean, Valerio,* and the instant case. In each case, the state court's reasons for rejecting the relevant claims were *mutually inconsistent.* A claim cannot be both previously litigated and procedurally defaulted; either it was raised in a prior proceeding or it was not. These cases do not allow for the possibility that the state court relied on *both* grounds for dismissing the relevant claims; only one ground could apply to each claim. The question is not whether the state relied primarily on a particular ground, but on *which* mutually exclusive ground the state court relied. When either ground is a possibility, the choice between them is wholly arbitrary. It is not our role to make such a choice.

The judgment of the district court is therefore reversed as to the dismissal of Ground Five as procedurally barred, and affirmed as to all other grounds. The case will be remanded to the district court for consideration of the merits of Ground Five. Each party shall bear its own costs.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

BEEZER, Circuit Judge, dissenting:

Today's opinion concludes that it was error to look to the circumstances surrounding an ambiguous state court order in determining whether the petitioner's ineffective assistance of trial counsel claim was procedurally defaulted. Today's decision ignores the clear teachings of the Supreme Court in *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d

640 (1991) and *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). I respectfully dissent.

I

Kelly Koerner is currently serving a life without parole sentence in Nevada for the murder of his former wife. After Koerner pleaded guilty to first-degree murder, he elected not to appeal his conviction. Koerner then initiated a number of collateral challenges to his conviction in the Nevada state courts.[1]

In his third round of state collateral challenges ("Third Petition"), Koerner raised a claim for the first time that he was denied the constitutional right to effective assistance of trial counsel because his trial counsel failed to file a direct appeal. The Nevada district court denied this claim and five others on the ground that Koerner's petition was a successive petition under Nevada law and all of the claims had been decided in previous collateral proceedings. *See* Nev.Rev.Stat. 34.745(3) (West 1993).

The Nevada Supreme Court dismissed Koerner's appeal, but for slightly different reasons than those on which the state district court relied. According to the Nevada Supreme Court, all of Koerner's claims were barred because they had (1) been decided on their merits in previous collateral proceedings or (2) could have been raised in previous collateral proceedings but were not. *See* Nev.Rev.Stat. 34.810 (West 1993); *see also Dromiack v. Warden,* 97 Nev. 348, 349–50, 630 P.2d 751 (1981) (holding that the failure to assert all

---

1. At the time Koerner initiated his collateral challenges to his conviction, Nevada provided two routes for collaterally challenging a conviction: a petition for post-conviction relief under Nev.Rev.Stat. Chapter 177 and a petition for writ of habeas corpus under Nev.Rev. Stat. Chapter 34. *See Pellegrini v. State,* 117

Nev. 860, 34 P.3d 519, 526–530 (2001). Subsequently, Nevada repealed the procedures under Nev.Rev.Stat. Chapter 177, leaving only the procedures available under Nev.Rev. Stat. Chapter 34. *See Pellegrini,* 34 P.3d at 528–530.

claims in one petition is a waiver absent a showing that the claims could not reasonably be raised in previous petition).

After Koerner filed his present federal habeas petition, the federal district court concluded that Koerner's ineffective assistance of trial counsel claim was procedurally barred under Nevada law because it was raised for the first time in Koerner's Third Petition. Further, the federal district court concluded that Koerner did not show "cause and prejudice" for this procedural default and dismissed Koerner's ineffective assistance of trial counsel claim without addressing its merits. I would affirm.

## II

In contrast to the court's opinion, I accept the teaching of the Supreme Court's precedents. These precedents establish that the district court had a duty to go beyond the face of the Nevada Supreme Court order dismissing Koerner's Third Petition and to look to the circumstances surrounding that order in making its procedural default determination.

## A

Federal courts cannot review a constitutional claim raised in a habeas petition if the claim was denied by the state courts on an "independent and adequate" state ground. *Coleman v. Thompson,* 501 U.S. 722, 729–31, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In determining whether a state court has relied on an "independent and adequate" state ground in denying a petitioner's federal claims, the Supreme Court has provided us with three important lessons:

*First,* if the decision of the last state court to which the petitioner presented his federal claims "fairly appear[s] to rest primarily on federal law or to be interwoven with federal law," a federal court may presume the availability of federal habeas

review unless the state court opinion provides a "plain statement" indicating that the decision relies on an "independent and adequate state ground." *Coleman v. Thompson,* 501 U.S. at 735, 111 S.Ct. 2546. The presumption in favor of federal review, called the *Harris* presumption, stems from the Supreme Court's decision in *Harris v. Reed,* 489 U.S. 255, 260–63, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

*Second,* where the last state court order addressing a claim does not fairly appear to rest on or to be interwoven with federal law, a plain statement is not required of the state court in order for the claim to be barred by an independent and adequate state ground. *See Coleman,* 501 U.S. at 735–36, 111 S.Ct. 2546.

*Third,* because no plain statement is required when a state court order does not fairly appear to rest on or to be interwoven with federal law, federal courts must look to "surrounding circumstances" in order to determine the basis of a state court order. *Ylst v. Nunnemaker,* 501 U.S. 797, 802–03, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *see also Coleman* 501 U.S. at 740, 111 S.Ct. 2546 (looking to external sources to clarify a state court order).

## B

The Nevada Supreme Court's decision addressing Koerner's Third Petition does not fairly appear to rest primarily on federal law or to be interwoven with federal law. As a result, the district court could not rely on the plain statement requirement of the *Harris* presumption, and had to look to "surrounding circumstances" to clarify the basis of the Nevada Supreme Court's order dismissing Koerner's Third Petition appeal. *Ylst,* 501 U.S. at 802, 111 S.Ct. 2590; *see also Coleman,* 501 U.S. at 735–40, 111 S.Ct. 2546; *Thomas v. Lewis,* 945 F.2d 1119, 1122 (9th Cir.1991) ("*Coleman* significantly undercuts *Harris* by cut-

ting away the 'plain statement' part of the [*Harris*] presumption."). The district court engaged in the required inquiry and correctly determined that the Nevada Supreme Court affirmed the dismissal of Koerner's ineffective assistance of trial counsel claim because Koerner could have raised his ineffective assistance of trial counsel argument in prior petitions but did not do so.

All of the six claims in Koerner's Third Petition were denied either because the claims were rejected on their merits in the two previous collateral challenges or because the claims could have been raised in the prior collateral challenges, but were not. Today's opinion recognizes these as mutually exclusive options. If Koerner's ineffective assistance of trial counsel claim was not rejected on its merits in Koerner's two previous collateral challenges, then the *only* reason Koerner's claim was dismissed in the Nevada state courts was because it should have been raised in Koerner's earlier collateral challenges, but was not.

The factual and procedural background of this case establish that Koerner's ineffective assistance of trial counsel claim was never addressed on its merits by the Nevada courts. As the court's opinion recognizes, Koerner did not fairly present his ineffective assistance of trial counsel claim during the course of his first two rounds of post-conviction challenges. The Nevada district courts ruled on the merits of these first two challenges in reasoned orders that did not once mention Koerner's unraised ineffective assistance of counsel claim. The Nevada Supreme Court affirmed both Nevada district court decisions for the reasons stated in the state district court orders.

There is no reason to believe that the Nevada Supreme Court ever ruled on Koerner's ineffective assistance of trial counsel claim before Koerner filed his Third Petition. Koerner even *admitted* in his Third Petition that he was raising his ineffective assistance of trial counsel claim for the first time and that the claim had not been addressed previously, although Koerner now argues to the contrary.

As Koerner's ineffective assistance of counsel claim was not presented or ruled on by the Nevada courts during the course of Koerner's first two state petitions, the Nevada Supreme Court's denial of the ineffective assistance of trial counsel claim in the Third Petition must be because Koerner could have raised this claim in an earlier collateral proceeding, but he failed to do so. The Nevada Supreme Court's invocation of the procedural bar based on Koerner's failure to raise his ineffective assistance of trial counsel claim in earlier collateral proceedings is an "independent and adequate" state ground of decision that bars federal habeas review. *See Bargas v. Burns*, 179 F.3d 1207, 1212 (9th Cir.1999) (Nevada law "clearly requires a petitioner to raise all claims in his first petition unless he can demonstrate cause and prejudice" and Nevada has a "clear and regularly applied rule that a petitioner must pursue all avenues for relief if he wishes to preserve his claims"); *see also Valerio v. Crawford*, 306 F.3d 742, 778 (9th Cir.2002) (recognizing the continuing vitality of *Bargas*).

The district court reviewed the state court decisions and state court filings in this case, determined that the Nevada Supreme Court did not rule on the merits of Koerner's ineffective assistance of trial counsel claim because it had not been raised in Koerner's previous petitions, and concluded that Koerner's claim was rejected by the Nevada Supreme Court on an "independent and adequate" state ground—Koerner's failure to raise the issue in his previous petitions. I find no error in the district court's conclusion.

## C

Today's opinion holds that a federal court may only look to the state court opinion at issue in determining whether a state court opinion relies on a procedural default. If a state court opinion is ambiguous on its face, today's opinion makes it impossible to find a procedural default because any such state court opinion does not "clearly and expressly rely on an independent and adequate state ground." *Valerio v. Crawford,* 306 F.3d 742, 773 (9th Cir.2002) (citation omitted). Despite its assertion to the contrary, today's opinion applies the plain statement requirement of *Harris. See* 489 U.S. at 263, 109 S.Ct. 1038.

Utilizing the *Harris* approach in these circumstances directly conflicts with *Coleman* and. *Ylst.* In both cases, the Supreme Court looked beyond the face of "ambiguous" state court orders in order to determine whether or not the state court relied on an "independent and adequate" state ground. *See Ylst,* 501 U.S. at 802, 805–06, 111 S.Ct. 2590; *Coleman,* 501 U.S. at 740, 111 S.Ct. 2546; *see also Stewart v. Smith,* 536 U.S. 856, 122 S.Ct. 2578, 2581, 153 L.Ed.2d 762 (2002) (reversing the Ninth Circuit in part because, despite the possibility that a state court ruled on the merits of an ineffective assistance of counsel claim, "[t]he record ... reveals no such ruling").

In *Ylst,* the Supreme Court discussed the question how to determine if one type of ambiguous state court order, the unexplained order, rests primarily on federal law. It stated:

> The question is not an easy one. In *Coleman* ..., although the order was unexplained, the nature of the disposition ... *and surrounding circumstances* ... indicated that the basis [of the ambiguous decision] was procedural default.

*Ylst,* 501 U.S. at 802, 111 S.Ct. 2590 (emphasis added). In *Coleman,* the Supreme Court looked to the filings in state court proceedings to determine the basis of the ambiguous state court order. *See* 501 U.S. at 740, 111 S.Ct. 2546. In *Ylst,* the Supreme Court looked to prior state court decisions for the same reason. *See* 501 U.S. at 805–06, 111 S.Ct. 2590. The district court in this case came to the correct decision after consulting these same sources.

The opinion of the court writes around these teachings, claiming that the recent *en banc* decision in *Valerio v. Crawford,* 306 F.3d at 771–775, dictates a different answer. In an effort to reconcile *Valerio* and *Coleman,* I believe *Valerio's* references to an "ambiguous" state court order should be understood in light of the state court opinion and the record in that case, rather than looking solely to the face of the state court's opinion. *Cf. Hunter v. Aispuro,* 982 F.2d 344, 347–48 (9th Cir. 1992) (concluding that an unexplained state court order was a decision on the merits in part because no contextual clues existed for clarifying the order). If today's understanding of *Valerio* is correct and it was improper for the district court in this case to go beyond the face of the Nevada Supreme Court's last order, we are in open defiance of the Supreme Court precedents in *Coleman* and *Ylst.* As I cannot reconcile today's opinion with *Coleman* and *Ylst* or agree with today's broad reading of *Valerio,* I must dissent.

## III

The district court correctly found, after consulting the record in this case, that Koerner's ineffective assistance of trial counsel claim cannot be heard in federal court because it was procedurally default-

ed in the Nevada courts on an "independent and adequate" state ground.

I would affirm the district court.