NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 2 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JB CARTER ENTERPRISES, LLC, DBA
ATM Merchant Systems

       Plaintiff-Appellant,

  v.

ELAVON, INC.,

       Defendant-Appellee.

No. 23-16142

D.C. No.
2:18-cv-00394-JAD-NJK

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted October 22, 2024
Phoenix, Arizona

Before: M. SMITH, BADE, and FORREST, Circuit Judges.

Plaintiff JB Carter Enterprises, LLC d/b/a ATM Merchant Systems
(ATMMS) appeals from a judgment following a bench trial in which the district
court found liability on one of six claims and awarded ATMMS one dollar in
nominal damages. *See JB Carter Enters., LLC v. Elavon, Inc.*, No. 2:18-cv-00394-

---

[*]This disposition is not appropriate for publication and is not precedent except
as provided by Ninth Circuit Rule 36-3.

JAD-NJK, 2023 WL 5206887 (D. Nev. Aug. 11, 2023). As the parties are familiar with the facts of this case, we do not recount them here. For the following reasons, we affirm in part, reverse in part, and remand.

"Following a bench trial, the judge's findings of facts are reviewed for clear error." *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1241 (9th Cir. 2021) (quoting *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 (9th Cir. 2004)); *see also* Fed. R. Civ. P. 52(a)(6). We must accept the district court's findings unless we are "left with the definite and firm conviction that a mistake has been committed." *Yu*, 15 F.4th at 1241 (quoting *N. Queen Inc. v. Kinnear*, 298 F.3d 1090, 1095 (9th Cir. 2002)). "The district court's conclusions of law following a bench trial are reviewed *de novo*." *Id.* (quoting *Lentini*, 370 F.3d at 843).

1.      ***Fraud.*** ATMMS argues that the district court erred in concluding that ATMMS failed to prove fraud.[1] The elements of fraud under Nevada law, which must be proven by clear and convincing evidence, are (1) a false representation;

---

[1] The district court identified three fraud claims: (1) that Elavon did not provide EMV capabilities by the liability-shift deadline; (2) that Elavon did not provide EMV PIN debit capabilities by the liability-shift deadline; and (3) that Elavon failed to deliver EMV-compliant L5200 terminals. *JB Carter Enters.*, 2023 WL 5206887, at *12–15, 17. The district court concluded that ATMMS failed to prove multiple elements of the second claim and that the third claim was foreclosed by our prior decision. *Id.* at *17; *see also JB Carter Enters., LLC v. Elavon, Inc.*, 854 F. App'x 144, 148 (9th Cir. 2021). ATMMS specifically and distinctly argues only that the district court erred on the first claim. Accordingly, ATMMS forfeited any challenge with respect to the latter two fraud claims. *See Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003).

(2) the defendant knew or believed that the representation was false, or made the representation without a sufficient basis; (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance on the representation; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff was damaged by its reliance. *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) (citing *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975)).

The district court concluded that ATMMS proved all but the third element. *JB Carter Enters.*, 2023 WL 5206887, at *12–15. Specifically, the district court found that Defendant Elavon, Inc. made various false representations that it would provide ATMMS the ability to process EMV transactions by October 2015 and that Elavon made these representations, at a minimum, without a sufficient basis. *Id.* at *12–13. Likewise, it found that ATMMS justifiably relied on and was damaged by these representations. *Id.* at *13–14. However, the district court held that ATMMS failed to prove that Elavon acted with the requisite intent because Elavon did not "intentionally mislead" ATMMS or "mean to convey" certain promises. *Id.* at *14– 15. However, testimony from Elavon's witnesses plainly indicated that Elavon made the representations at issue to keep ATMMS as a client—that is, by inducing ATMMS's reliance on Elavon's representations regarding certain target dates. The district court clearly erred in concluding otherwise.

2. ***Contract Claims.*** ATMMS argues that the district court erred in

concluding that ATMMS did not prove its breach of contract and breach of the implied covenant of good faith and fair dealing claims. Both claims depend upon the existence of a valid contract. *See Richardson v. Jones*, 1 Nev. 405, 408 (1865); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991); *Iliescu v. Reg'l Transp. Comm'n*, 522 P.3d 453, 458 (Nev. Ct. App. 2022). A valid contract requires "an offer and acceptance, meeting of the minds, and consideration." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012) (quoting *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005)). Contract claims must be proven by a preponderance of the evidence. *Ramezzano v. Avansino*, 189 P. 681, 685 (Nev. 1920); *see also Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 435 (Nev. 2010) ("Generally, a preponderance of the evidence is all that is needed to resolve a civil matter unless there is clear legislative intent to the contrary.").

The district court found that ATMMS failed to prove a meeting of the minds.[2] *JB Carter Enters.*, 2023 WL 5206887, at *15. "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire*, 283 P.3d

---

[2]As with fraud, the district court identified three sets of contract claims. *JB Carter Enters.*, 2023 WL 5206887, at *15–17. It found that ATMMS failed to establish multiple elements of the second claim and that ATMMS had not been damaged under the third claim. *Id.* ATMMS argues on appeal only that the district court erred with respect to the alleged agreement that Elavon provide EMV-capabilities by the liability-shift deadline—the first contract claim. Therefore, ATMMS forfeited any argument of error with respect to the second and third alleged agreements. *See Koerner*, 328 F.3d at 1048.

at 255. "Which terms are essential 'depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought.'" *Id.* (quoting Restatement (Second) of Contracts § 131, cmt. g (Am. L. Inst. 1981)). The parties presented conflicting testimony about whether there was a firm understanding that Elavon would provide EMV capabilities by a particular date. The district court did not clearly err in finding that ATMMS failed to prove a meeting of the minds by a preponderance of the evidence.

       3.     ***Intentional Interference with Contractual Relations.*** ATMMS argues that the district court erred in concluding that ATMMS did not prove intentional interference with existing and prospective contractual relations.[3] These claims both require that the defendant intentionally act to disrupt a contractual relationship. *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 792 P.2d 386, 388 (Nev. 1990) (per curiam); *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (per curiam). This element may be established if the defendant specifically intends to interfere with a contractual relation or knows that the interference is substantially likely to occur as a result of its action. *Gray Line Tours*, 792 P.2d at 388 (adopting the Restatement (Second) of Torts § 766B(d) (Am. L. Inst. 1979));

---

[3]Again, ATMMS asserted three theories of intentional interference, *JB Carter Enters.*, 2023 WL 5206887, at *16–17, and ATMMS clearly challenges only the district court's decision on the first theory. Any argument related to the second and third theories was forfeited. *See Koerner*, 328 F.3d at 1048.

*J.J. Indus.*, 71 P.3d at 1268; *see also* Restatement (Second) of Torts § 766, cmt. j.

The district court found that Elavon did not know interference was substantially likely to result because ATMMS "stuck with" Elavon after multiple delays in Elavon's ability to provide ATMMS with EMV capabilities. *JB Carter Enters.*, 2023 WL 5206887, at \*16. This was clear error. Elavon could have simultaneously known that interference was substantially likely to occur and that ATMMS was "suffering" through the interference. *Cf. id.* And here the record shows that Elavon knew of (1) ATMMS's business structure and clientele, (2) the likely impacts of failing to provide EMV capabilities by the liability-shift deadline, and (3) that around October 2015 ATMMS's clients were breaching or not renewing their contracts because they were no longer shielded from liability. Because the district court did not address the other elements of intentional interference, we remand these claims for further consideration.

4.      ***Damages.*** Because the district court found that ATMMS had proven its negligent-misrepresentation claim, it analyzed whether ATMMS was entitled to damages. *See id.* at \*12–15, 17–19. ATMMS sought the same compensatory damages for each of its claims, as well as punitive damages on its intentional-tort claims.

(a)      **Actual Damages.** A plaintiff must prove a non-speculative amount of damages with reasonable accuracy. *Mort Wallin of Lake Tahoe, Inc. v.*

*Com. Cabinet Co.*, 784 P.2d 954, 955 (Nev. 1989) (per curiam); *Clark Cnty. Sch. Dist. v. Richardson Constr., Inc.*, 168 P.3d 87, 97 (Nev. 2007). ATMMS presented a single witness—its general manager—to testify about its damages. The district court found that the general manager's testimony was not credible for several reasons, including that he did not provide any detail about which transactions were lost because of Elavon's conduct. *JB Carter Enters.*, 2023 WL 5206887, at *18. Accordingly, the district court concluded that ATMMS's evidence regarding the amount of its actual damages was speculation, from which the district court could not make a reasonably accurate damages calculation, and awarded nominal damages of one dollar. *Id.* That was not clear error.[4] In a single sentence, ATMMS argues that the district court erred by failing to award reputational damages. This argument was forfeited, however, because ATMMS did not explain its argument or cite any supporting authorities. *Cal. Pac. Bank v. FDIC*, 885 F.3d 560, 570 (9th Cir. 2018) (citing Fed. R. App. P. 28(a)(8)(A)).

(b) **Punitive Damages.** Punitive damages are authorized "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." Nev. Rev. Stat. § 42.005(1); *accord Garcia v. Awerbach*, 463 P.3d 461, 464 (Nev. 2020). Because the district court

---

[4]ATMMS does not argue that the district court's other findings related to the calculation of damages were error, so we do not address them. *See Koerner*, 328 F.3d at 1048.

concluded that ATMMS had not proven that Elavon committed an intentional tort, it held that punitive damages were unavailable. *JB Carter Enters.*, 2023 WL 5206887, at *19. But as explained above, the district court erred in concluding that ATMMS had not proved at least one intentional tort—fraud. Therefore, the district court's reasoning was error.

Elavon suggests that ATMMS cannot recover punitive damages because it was not entitled to compensatory damages. Nevada law indeed provides that compensatory damages are a prerequisite for punitive damages. *See* Nev. Rev. Stat. § 42.005(1). However, Elavon does not address whether nominal damages are considered compensatory under Nevada law, as is the case in some states interpreting nearly identical statutes. *See, e.g.*, *California v. Altus Fin. S.A.*, 540 F.3d 992, 1000 (9th Cir. 2008) ("California courts have long interpreted [Cal. Civ. Code § 3294(a)] to require an award of compensatory damages, even if nominal, to recover punitive damages."); *see also* 25A C.J.S. Damages § 223, Westlaw (database updated Dec. 2024). Instead, Elavon assumes that compensatory damages and nominal damages should be treated differently. Because Elavon did not adequately brief this issue and ATMMS understandably did not address it in reply, we treat this issue as forfeited on appeal. On remand, the district court should consider whether punitive damages are available under Nevada law in the first instance in light of our

decision.[5]

For the forgoing reasons, the judgment of the district court is **AFFIRMED IN PART** as to ATMMS's contract claims and actual and reputational damages, **REVERSED IN PART** as to ATMMS's fraud and intentional-interference claims and punitive damages, and **REMANDED** to the district court for further proceedings. Each party to bear its own costs on appeal.

---

[5]In evaluating the amount of appropriate punitive damages, if any, the district court must consider both the limits imposed by Nevada law, *see* Nev. Rev. Stat. § 42.005(1)(b), and by the Due Process Clause of the Fourteenth Amendment, *see, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419–29 (2003).