Terence Philip **RAMSDEN**,
Plaintiff–Appellee,

v.

**UNITED STATES of America,**
Defendant–Appellant.

No. 92–55213.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1993.

Decided Aug. 18, 1993.

Jean A. Kawahara, Asst. U.S. Atty., Los Angeles, CA, for defendant-appellant.

Deborah J. Lewis, Deputy Federal Public Defender, Los Angeles, CA, for plaintiff-appellee.

Before GIBSON *, HALL, and KLEINFELD, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

The Government appeals the district court's order granting Mr. Ramsden's motion for the return of illegally seized documents pursuant to Fed.R.Crim.P. 41(e). The district court had jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction under 28 U.S.C. § 1291.

## FACTUAL BACKGROUND

On July 23, 1991, the District Court for the Central District of California issued a provisional arrest warrant for Ramsden at the request of the British government. The warrant was based on the British government's investigation into charges that Ramsden engaged in fraudulent trading and false accounting in the United Kingdom.

Early on the morning of September 8, 1991, two deputy U.S. marshals went to Ramsden's hotel room to execute the war-

* Hon. Floyd R. Gibson, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

rant. Escorted by two hotel security guards and the hotel manager, they went to Ramsden's room and knocked on the door. When Ramsden answered, the marshals requested that he step out into the hallway, where he was placed under arrest.

Ramsden was allowed to reenter his room in order to change clothes. The marshals escorted Ramsden inside at which point they noticed loose papers on a desk and on the floor surrounding the desk. They also noticed a suitcase and briefcase sitting near the desk. To confirm that there were no concealed weapons present, the marshals opened the suitcase and briefcase and saw that they contained miscellaneous documents. After consultation with the International Criminal Police Organization (Interpol), the marshals seized the documents in the room as potential evidence for the British authorities.

On September 12, 1991, a British official was given the opportunity to review a portion of the seized documents. He found numerous documents relevant to his office's investigation of Ramsden. On November 7, 1991, the United States Attorney's Office filed a request for Ramsden's extradition on behalf of the British government.

On September 30, 1991, Ramsden sought to have the seized documents returned pursuant to Rule 41(e). On December 9, 1991, following full briefing and a hearing, the district court granted Ramsden's motion. It recognized that the Government had a legitimate interest in retaining the documents: maintaining relations with the United Kingdom by aiding the British government in its prosecution of Ramsden. However, the district court concluded that under the circumstances equity demanded that the seized documents be returned to Ramsden without giving the Government the opportunity to copy them.

## STANDARD OF REVIEW

■ We review the district court's decision to exercise its equitable jurisdiction under Rule 41(e) for abuse of discretion. *See Kiesel Co., Inc. v. Householder,* 879 F.2d 385, 388 (8th Cir.1989); *Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir.1975). "We review the district court's interpretation of Rule 41(e) *de novo." United States v. Mills,* 991 F.2d 609, 612 (9th Cir.1993) (citing *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 855 (9th Cir.1991)).

## DISCUSSION

## I

### A. *District Court Jurisdiction*

■ In the instant case, the district court concluded that criminal proceedings had not been instituted against Ramsden at the time he filed his Rule 41(e) motion.[1] Ordinarily, Rule 41(e) is used to seek the return of seized property after an indictment has been issued. *Black Hills Institute v. Dept. of Justice,* 967 F.2d 1237, 1239 (8th Cir.1992). Nonetheless, district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant. *United States v. Martinson,* 809 F.2d 1364, 1366–67 (9th Cir.1987). These motions are treated as civil equitable proceedings and, therefore, a district court must exercise "caution and restraint" before assuming jurisdiction. *Kitty's East v. United States,* 905 F.2d 1367, 1370 (10th Cir.1990).

■ To prevent the district courts from exercising their equitable jurisdiction too liberally, the circuit courts have enumerated certain factors that must be considered before a district court can reach the merits of a preindictment Rule 41(e) motion. In *Richey v. Smith,* 515 F.2d 1239 (5th Cir.1975), the

---

1. As amended in 1989, Rule 41(e) provides:

   A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that the person is entitled to the lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

Fifth Circuit listed four factors that a district court should consider in deciding whether to entertain a Rule 41(e) motion made prior to the initiation of criminal proceedings. These factors include: 1) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2) whether the movant has an individual interest in and need for the property he wants returned; 3) whether the movant would be irreparably injured by denying return of the property; and 4) whether the movant has an adequate remedy at law for the redress of his grievance. *Id.* at 1243–44. *See also Kiesel Company, Inc. v. Householder,* 879 F.2d 385, 387 (8th Cir.1989) (movant must establish callous disregard of the Fourth Amendment, irreparable injury if relief is not granted, and lack of an adequate remedy at law); *Kitty's East,* 905 F.2d at 1370–71 (movant must establish irreparable injury if he is deprived of his property and lack of an adequate remedy at law).

■ In the instant case, the district court utilized the Fifth Circuit's approach, and considered all four factors. In finding that the Government displayed callous disregard for Ramsden's rights the district court relied in large part on the Government's admission that the search and seizure violated Ramsden's Fourth Amendment rights. No warrant was obtained and no exception to the warrant requirement was applicable. In addition, the district court found that although the Government had the opportunity to secure a warrant, it simply chose not to comply with its obligations under the Fourth Amendment. Under these circumstances, we do not think the district court erred in concluding that the Government exhibited callous disregard for Ramsden's constitutional rights.

The Government challenges this finding, arguing that the marshals' conduct was objectively reasonable in light of the legal rules that were clearly established at the time. This argument is unpersuasive. The Ninth Circuit has established that law enforcement authorities are barred from conducting a warrantless search of an individual's hotel room after arresting him in the hallway absent certain recognized exceptions to the warrant requirement. *United States v. Whitten,* 706 F.2d 1000, 1016 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). These exceptions do not apply here. The Government is unable to establish that exigent circumstances were present, that entry into Ramsden's hotel room qualified as a search incident to an arrest, or that Ramsden consented to the marshal's entry into the room.[2] *Id.* Thus, the marshals' conduct cannot be excused on the ground that it was objectively reasonable in light of clearly established law.

The district court did not make an express finding concerning the second *Richey* factor. However, we conclude that Ramsden has established an individual interest in and need for the documents. This interest derives from the fact that the documents are necessary for Ramsden to run his business.

■ Turning to the third *Richey* factor, the district court concluded that Ninth Circuit does not require a finding of irreparable injury. However, the factors a district court should consider in deciding whether to exercise its equitable jurisdiction are a question of first impression in this circuit. We agree with the Fifth, Eighth, and Tenth Circuits that a district court must determine whether a movant will suffer irreparable injury when considering whether to reach the merits of a preindictment Rule 41(e) motion.

Ramsden offers two reasons why he will suffer irreparable injury if the seized documents are not returned to him. First, he contends that without the papers he cannot run his business, which in turn will make it impossible for him to support his family. Although this establishes an individual interest in the documents, it does not follow that Ramsden will suffer irreparable injury if the documents are not returned. Rather, the district court properly discounted this injury

---

**2.** The Government cites *Washington v. Chrisman,* 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), for the proposition that police officers can make plain view seizures of contraband after they accompany an arrestee into a room after making an arrest in a hallway. This case and its progeny are clearly distinguishable because no contraband was seized in the instant case and many of the documents were not in plain view.

by recognizing that Ramsden failed to establish that copies of the documents would not fulfill his business needs. *See Blinder, Robinson & Co., Inc. v. United States*, 897 F.2d 1549, 1557 (10th Cir.1990).

Ramsden also claims that he will suffer irreparable harm if the documents are not returned because they may lead to his prosecution in England. The district court held that the threat of prosecution is ordinarily not enough to constitute irreparable injury. Both the Eighth and Tenth Circuits have taken this position. *See Householder*, 879 F.2d at 389; *Blinder, Robinson*, 897 F.2d at 1557. As the court in *Householder* observed, if the mere threat of prosecution were allowed to constitute irreparable harm, every potential defendant could point to the same harm and invoke the equitable powers of the district court. In this sense, the district court's exercise of its equitable jurisdiction would not be extraordinary, but instead quite ordinary. *Householder*, 879 F.2d at 389.

In contrast, the Fifth Circuit has held that the threat of future prosecution can constitute irreparable harm. In *Richey*, the court stated that "a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased." *Richey*, 515 F.2d at 1243 n. 10.

We find the position taken by the Eighth and Tenth Circuits to be more persuasive. The mere threat of prosecution is not sufficient to constitute irreparable harm. Thus, we conclude that Ramsden has not established that he will suffer irreparable harm if the seized documents are not returned to him.

Finally, we agree with the district court that Ramsden does not have an adequate remedy at law in the United States. The Government does not plan to prosecute Ramsden and therefore he will not have the opportunity to challenge the seizure of the documents and request their return at a later date in a court in this country. The Government, however, contends that Ramsden has an adequate remedy at law because he will have the opportunity to argue that the documents were illegally seized in the courts of the United Kingdom. To support its argu-

ment, the Government points to Section 78 of the Police and Criminal Evidence Act of 1978, which allows a British court to consider the circumstances under which evidence was obtained in deciding whether or not to admit the evidence.

This argument is unpersuasive. First, because the search and seizure was conducted in the United States by government officials, both the public and Ramsden have an interest in seeing that he has an opportunity to vindicate his rights in this country. Moreover, there is no guarantee that Ramsden will actually have an opportunity to challenge the seizure in the United Kingdom. As Ramsden points out, courts in this country are in no position to determine whether Section 78 of the Police and Criminal Evidence Act of 1978 applies to the conduct of foreign officials or how vigorously this rule is applied by the British courts.

Thus, Ramsden has established that the Government exhibited callous disregard for his constitutional rights, that he has a need for the documents, and that he does not have an adequate remedy at law to redress his grievance. While he is unable to demonstrate that he will suffer irreparable harm if the documents are not returned, we hold that the balance of equities tilts in favor of reaching the merits of Ramsden's Rule 41(e) claim. As a result, we conclude that the district court did not abuse its discretion in deciding to exercise equitable jurisdiction in this case.

### B. *Merits*

■ Rule 41(e) does not set forth a precise test for determining whether the illegally seized documents should be returned to a movant. Instead, the Advisory Committee Notes to the 1989 Amendment of Rule 41(e) provide that "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property." The United States' retention of the property generally is reasonable if it has a need for the property in an investigation or prosecution. However, "if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable."

Advisory Committee Notes to the 1989 Amendment of Rule 41(e).

▉ In the instant case, the Government stated that it needed to retain the documents in order to turn them over to the British authorities conducting an investigation into Ramsden's business activities. In light of various treaty obligations, this is a legitimate law enforcement interest under Rule 41(e). However, this interest could have been satisfied by copying the documents and turning them over to the British authorities. Thus, we hold that the Government's continued retention of the original documents in this case was unreasonable, and that the district court did not err in ordering that the documents be returned to Ramsden.

## II

In addition to ordering the Government to return the original documents to Ramsden, the district court precluded the Government from reviewing or copying the documents. The Advisory Committee Notes authorize this result by providing that "[i]n some circumstances ... equitable considerations might justify an order requiring the government to return or destroy all copies of records it has seized." The issue is whether the Government's conduct was sufficiently reprehensible in this case to warrant this sanction.

Unfortunately, there is no case law to help guide our decision.[3] As discussed earlier, the Government did display callous disregard for Ramsden's constitutional rights in searching his hotel room and seizing his documents. However, we do not think that this is sufficient to justify the district court's decision in the instant case.[4] The spirit of Rule 41(e) is one of compromise. The Advisory Committee Notes provide:

[a]s amended, Rule 41(e) avoids an all or nothing approach whereby the government must either return records and make no copies or keep the originals notwithstanding the hardship to their owner. The amended rule recognizes that reasonable accommodations might protect both the law enforcement interests of the United States and the property rights of property owners and holders. In many instances documents and records that are relevant to ongoing or contemplated investigations and prosecutions may be returned to their owner as long as the government preserves a copy for future use.

In light of this language and the policy underlying Rule 41(e), the most appropriate outcome in this case is to allow Ramsden to retain the original documents, but to ensure that the Government is afforded copies of these documents. This prevents Ramsden from suffering hardship to his business, and at the same time advances the Government's legitimate law enforcement interest in aiding the British in their investigation. Thus, we hold that the district court erred by precluding the Government from reviewing or copying the illegally seized documents.

## CONCLUSION

The district court correctly exercised its equitable jurisdiction to reach the merits of Ramsden's preindictment Rule 41(e) motion. In addition, the district court did not err in ordering the Government to return the illegally seized records. However, the district court did err in barring the Government from reviewing or copying these records. Thus, we AFFIRM in part and REVERSE in part, and instruct the district court to allow the Government to make copies of the seized documents. Each party will pay their own costs.

---

**3.** The Advisory Committee Notes cite *Paton v. LaPrade*, 524 F.2d 862, 867–69 (3rd Cir.1975) as an example of a situation where equitable considerations justify requiring the government to return or destroy all copies of records it has seized. However, this case is not helpful. It did not involve Rule 41(e), but instead concerned a suit by students seeking to have files compiled by the FBI expunged on the ground that the government's continued possession endangered future educational and employment opportunities. Significantly, the Third Circuit overturned the district court's order of expungement.

**4.** Our decision does not rule out the possibility that callous disregard for a movant's constitutional rights may under some circumstances justify denying the government the right to retain copies of seized documents.