**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

SAMUEL KAMA,
            *Defendant-Appellant.*

No. 03-30231

D.C. No.
M-02-00469-AS

OPINION

Appeal from the United States District Court
for the District of Oregon
Donald C. Ashmanskas, Magistrate Judge, Presiding

Argued and Submitted
November 2, 2004—Portland, Oregon

Filed January 13, 2005

Before: Warren J. Ferguson, Stephen S. Trott, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Trott;
Concurrence by Judge Ferguson

**COUNSEL**

Richard S. White, Portland, Oregon, for the defendant-appellant.

Mark T. Quinlivan, U.S. Department of Justice, Washington, D.C., for the plaintiff-appellee.

**OPINION**

TROTT, Circuit Judge:

Samuel Kama appeals the district court's decision to deny his motion to return property, specifically, 2.49 grams of medically prescribed marijuana seized by the Portland Police Bureau's Drug and Vice Division ("Police Bureau") and, later, by the Drug Enforcement Administration ("DEA"). The district court denied Kama's motion, concluding that it lacked equitable jurisdiction to consider the motion. Here, Kama argues only the merits of his motion and fails to address the threshold issue of whether the district court abused its discre-

tion in declining to exercise its equitable jurisdiction. We conclude that Kama waived the equitable jurisdiction issue by failing to raise it in his opening brief, or for that matter, by failing to address the issue at all. Consequently, Kama's arguments concerning the merits of his motion are rendered moot, and we affirm.

## BACKGROUND

The marijuana at issue was seized in January of 1999 while the Police Bureau investigated a reported marijuana grow at the residence of Richard LeBus and Maria Jackson. While the police were still searching for the grow, Kama arrived at the LeBus-Jackson residence in a pick-up truck, and after being questioned, he admitted to an officer that he had marijuana on his person. Kama voluntarily surrendered the marijuana to the officer and told the officers that he smoked marijuana only for medicinal purposes. Kama admitted also to being involved in the marijuana grow.

Although Kama was never prosecuted, the City of Portland ("Portland") did not return the marijuana seized from him by the Police Bureau and now held by Portland. In August of 1999, Kama filed a motion for return of property in the Circuit Court for the State of Oregon for Multnomah County, requesting return from Portland of the 2.49 grams of marijuana and the marijuana confiscated from the grow. The state court granted the motion as to the 2.49 grams but denied it as to the other marijuana. The state appellate court affirmed the decision.

Unhappy with the state court's order to return the marijuana to Kama, the DEA applied for a seizure warrant in the United States District Court for the District of Oregon. The district court issued the warrant, and Portland moved to quash it. The district court denied the motion to quash but stayed execution of the warrant so that Portland could confer with the state court as to whether it would be in contempt of the

state court order by turning over the marijuana to the DEA. The next day, without explanation, the district court vacated the order staying the warrant. Subsequently, the DEA seized the marijuana from Portland before it could be returned to Kama pursuant to the state court order.

After the DEA seized the marijuana from Portland, the district court granted Kama leave to intervene and file a motion to return property. The district court denied Kama's motion after it determined that it did not have equitable jurisdiction to consider the motion. The district court noted also that even if the court had jurisdiction to consider it, the court would have denied it on its merits because the marijuana was contraband, and Kama was not entitled to possess contraband.

## DISCUSSION

**[1]** Kama's motion to return property is governed by Federal Rule of Criminal Procedure 41(g).[1] Under that rule, a person deprived of his property may move for the property's return in the district court where the property was seized. Although Rule 41(g) is ordinarily used to seek return of property after an indictment is issued, "district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant." *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) (construing former Rule 41(e)). "These motions are treated as civil equitable proceedings, and, therefore, a district court must exercise 'caution and restraint' before assuming jurisdiction." *Id.*

---

[1]The district court examined Kama's motion under Rule 41(e), the subsection that formerly governed motions to return property. Motions to return property are now relegated to Rule 41(g). H.R. Doc. No. 107-203, at 420 (2002). With the change in the subsection, the language of Rule 41(g) has been amended "as part of the general restyling of the Criminal Rules to make them more easily understood," but the substance of the rule has not changed. Fed. R. Crim. P. 41 note on 2002 amends.

**[2]** "[B]efore a district court can reach the merits of a pre-indictment [Rule 41(g)] motion," the district court must consider whether: (1) "the Government displayed a callous disregard for the constitutional rights of the movant"; (2) "the movant has an individual interest in and need for the property he wants returned"; (3) "the movant would be irreparably injured by denying return of the property"; and (4) "the movant has an adequate remedy at law for the redress of his grievance." *Id.* at 324-25 (citing *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975)). If the "balance of equities tilts in favor of reaching the merits" of the Rule 41(g) motion, the district court should exercise its equitable jurisdiction to entertain the motion. *Ramsden*, 2 F.3d at 326.

**[3]** Here, the district court found that all but the fourth factor weighed against reaching the merits of Kama's motion, and the court accordingly declined to exercise its jurisdiction. Normally, we would review this decision for abuse of discretion. *See id.* at 324. But, Kama never challenged the district court's decision to decline to exercise its equitable jurisdiction. Instead, Kama jumped straight to the merits of his motion by raising a number of constitutional issues that attack the district court's power to issue the warrant in the first place. Even if these claims are meritorious, Kama misses the mark—we can only reach the merits of his motion if the district court abused its discretion when it declined to exercise its equitable jurisdiction. *See id.*

**[4]** Therefore, we must decide if Kama waived the issue of whether the district court abused its discretion. Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief. *See Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (quoting *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992)). It is undisputed that Kama did not argue in his opening brief that the district court abused its discretion when it declined to exercise its equitable jurisdiction, so we conclude that Kama waived the issue. Kama does not argue that any

exception applies, *see Ullah*, 976 F.2d at 514, and we will not apply an exception on our own accord.

## CONCLUSION

[5] Kama waived the threshold issue of whether the district court abused its discretion when it declined to exercise its equitable jurisdiction. This result renders all issues concerning the merits of Kama's motion moot.

**AFFIRMED.**

---

FERGUSON, Circuit Judge, concurring specially:

I concur that Kama waived his challenge to the District Court's determination that it lacked equitable jurisdiction to entertain his motion to return 2.49 grams of medically prescribed marijuana. I write separately, however, to underscore the District Court's disruption of state judicial administration in this case.

The District Court committed two distinct errors in granting the seizure warrant to the Drug Enforcement Administration ("DEA"). First, it erroneously permitted the DEA to seize the subject marijuana from the Portland Police Bureau ("the Bureau") even though the Bureau is not a "person" within the meaning of the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq*. In so doing, it prevented the Bureau from enforcing a valid state court order. Second, it erroneously attempted to establish concurrent in rem jurisdiction over the subject marijuana.

### I.

Respondent ("the Government") sought and obtained a warrant from the District Court to seize marijuana that the

Bureau had confiscated and, at the time, possessed. The Government based its request for a seizure warrant in part on § 844(a) of the CSA, contending that Kama knowingly or intentionally possessed marijuana, a controlled substance, and, as such, violated federal law. Consequently, according to the Government, probable cause existed such that the DEA was entitled to confiscate the subject marijuana from the Bureau.

Prior to the execution of the federally-issued seizure warrant, however, the Circuit Court for the State of Oregon for Multnomah County ("Multnomah County Circuit Court") had already granted, and the Oregon Court of Appeals and Oregon Supreme Court had so affirmed, Kama's motion to return the marijuana in his possession that the Bureau had previously seized. The Bureau was under direct state court order to return the subject marijuana to Kama. To comply with the federally-issued seizure warrant would have necessarily required the Bureau to contravene the state court order. The City of Portland, therefore, filed a motion to quash the federal seizure warrant, but the District Court summarily denied it.

A plain reading of § 844(a) of the CSA makes clear that the DEA may enforce penalties only upon those "*person[s]* [who] knowingly or intentionally . . . possess a controlled substance." (emphasis added). The Supreme Court has observed that " 'in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it.' " *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that neither a state nor its officials acting in their official capacity are "persons" within the meaning of 42 U.S.C. § 1983) (quoting *United States v. Cooper Corp.*, 312 U.S. 600, 604 (1941)).

More recently, the Supreme Court has held that the "presumption that 'person' does not include the sovereign may only be disregarded upon some affirmative showing of statutory intent to the contrary." *Vt. Agency of Natural Res. v.*

*United States ex rel. Stevens*, 529 U.S. 765, 781 (2000) (arguing that the State was not a "person" for purposes of qui tam liability under the False Claims Act), *noted in Donald v. Univ. of Cal. Bd. of Regents*, 329 F.3d 1040, 1042-3 (9th Cir. 2003) (finding that state entities are not "persons" within the meaning of the False Claims Act); *United States v. Errol D., Jr.*, 292 F.3d 1159, 1162 (9th Cir. 2002) (finding that the federal government is not a "person" within the meaning of the Indian Major Crimes Act). Moreover, municipal police departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983. *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995); *see also Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (affirming a district court's dismissal of claims against a county sheriff's department); *Smith-Berch, Inc. v. Baltimore County*, 68 F.Supp. 2d 602, 626-27 (D. Md. 1999) (citing cases for the proposition that municipal departments, including police departments, are not persons within the meaning of 42 U.S.C. § 1983).

Applying *Stevens* and supporting case law to this case, the Bureau cannot be considered a "person" within the meaning of § 844(a) of the CSA unless the statutory intent of the CSA suggests otherwise. Nowhere in the CSA is there mention that a police bureau or such other entity is a "person" for purposes of penalizing possession of controlled substances.[1] To seize the subject marijuana pursuant to § 844(a) of the CSA, the Government needed to first establish that the marijuana was, indeed, in Kama's possession. Here, however, the subject marijuana was in the Bureau's possession. Thus, the District

---

[1]In its opposition to the City of Portland's motion to quash the federal seizure warrant, the Government erroneously summarized § 823(f) of the CSA as follows: "[n]o individual or *entity* may distribute or dispense a Schedule 1 Controlled Substance except as part of a strictly controlled research project that has been registered with the Drug Enforcement Administration and approved by the Food and Drug Administration." (emphasis added). In fact, neither § 823(f) nor any other provision under the CSA uses the word "entity" for purposes of penalizing possession of controlled substances.

Court should have abstained from issuing a seizure warrant pursuant to § 844(a) of the CSA until the subject marijuana was in fact in Kama's possession. This would necessarily have required the District Court to allow the Bureau to enforce the state court order.

## II.

A long-standing common-law rule prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court. *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 195 (1935); *In re One 1985 Cadillac Seville*, 866 F.2d 1142, 1145 (9th Cir. 1989). According to the Supreme Court, the rule's purpose is "[t]o avoid the unseemly and disastrous conflicts in the administration of our dual judicial system . . . and to protect the judicial processes of the court first assuming jurisdiction." *Penn Gen. Cas. Co.*, 294 U.S. at 195. This Circuit has reiterated the rule's purpose as "[maintaining] . . . comity between courts . . . ." *In re One 1985 Cadillac Seville*, 866 F.2d at 1145. While *Penn General Casualty Co.* does not establish a constitutional limitation on a federal court's jurisdiction, it does establish a strong prudential limitation—so strong, in fact, that if concurrent in rem jurisdiction is established, a federal district court has no discretion as to whether to yield to a prior state proceeding; it *"must* yield." *In re One 1985 Cadillac Seville*, 866 F.2d at 1145 (quoting *Penn Gen. Cas. Co.*, 294 U.S. at 195) (emphasis added).

The subject marijuana seized by Oregon state police pursuant to a search warrant was within the in rem jurisdiction of the Multnomah County Circuit Court. Sections 133.623-133.663 of the Oregon Code collectively establish a jurisdictional element to Oregon's statutory warrant and seizure scheme. Specifically, § 133.633(1) provides Oregon courts exclusive discretion to grant or deny motions for return or restoration of items seized. Given this clear assertion of exclu-

sive control by Oregon courts over seized items,[2] the Multnomah County Circuit Court possessed the subject marijuana such that it fell within the court's in rem jurisdiction.

The rule against concurrent in rem jurisdiction therefore applies in this case. In fact, this case appears to be of the very type envisioned by the Court in *Penn General Casualty Co.* Pursuant to a search warrant, Portland police officers seized the subject marijuana. Thereafter, the Multnomah County Circuit Court assumed in rem jurisdiction and ordered that the subject marijuana be returned to Kama. The Oregon Court of Appeals subsequently affirmed the decision, and the Oregon Supreme Court denied review. Before the court order could be enforced, however, the DEA sought and secured a seizure warrant from a federal district court. The District Court attempted to establish in rem jurisdiction over the subject marijuana by issuing a seizure warrant prior to the full enforcement of the state court order. The ensuing conflict in judicial administration here appears evident: a federal district court issues a seizure warrant for a res under state control and, in so doing, nullifies prior to its execution a state court order affirmed by the highest state court.

---

[2]The Fifth Circuit has held that, where a state statute places items seized by local law enforcement under judicial control, seizure by state police itself constitutes an assertion of in rem jurisdiction over the seized item. *Scarabin v. DEA*, 966 F.2d 989, 993-94 (5th Cir. 1992) (noting that the provision of Louisiana's rules of criminal procedure governing disposition of property seized by police pursuant to a warrant "clearly and unequivocally" demonstrated that "the state court asserts control over items seized pursuant to its warrant"). *See also In re $490,920 in United States Currency*, 911 F. Supp. 720, 725 (S.D.N.Y. 1996) (finding that a New York statute conferred in rem jurisdiction where it provided that seized items be held "in the custody of the court"); *Commonwealth v. Rufo*, 708 N.E.2d 947, 949 (Mass. 1999) (finding that a Massachusetts statute conferred in rem jurisdiction where it provided that seized evidence be held "under the direction of the court" and "disposed of as the court or justice orders") (citing Massachusetts General Laws Annotated 276, Section 3).

### III.

In granting a seizure warrant to the DEA without first waiting for the full enforcement of a valid order issued by the Multnomah County Circuit Court, and in assuming concurrent in rem jurisdiction over the subject marijuana, the District Court disrupted Oregon's judicial administration.