**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

LEONEL SALAZAR,
          *Defendant-Appellant.*

No. 04-50392

D.C. No.
CR-03-00026-
AHS-2

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
March 8, 2006—Pasadena, California

Filed July 24, 2006

Before: Susan P. Graber, Kim McLane Wardlaw, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Wardlaw;
Concurrence by Judge Rawlinson

## COUNSEL

Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Nguyen-Hong K. Hoang, Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

## ORDER

The ORDER published on April 10, 2006 and appearing at *United States v. Salazar*, 443 F.3d 1153 (9th Cir. 2006), is hereby WITHDRAWN. The clerk shall file the attached opinion, along with Judge Rawlinson's concurrence.

The panel has voted unanimously to deny the petition for panel rehearing and rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED. Further petitions shall not be entertained.

IT IS SO ORDERED.

---

## OPINION

WARDLAW, Circuit Judge:

Leonel Salazar was convicted under 18 U.S.C. §§ 2(b) and 2071(a) on Counts 3 and 6 of an indictment charging him with destroying and causing others to destroy documents filed and deposited with the Immigration and Naturalization Service ("INS") at the California Service Center ("CSC") in Laguna Niguel, California. The CSC receives and processes applications and petitions for immigration from California, Arizona, Nevada, Hawaii, and Guam. Count 3 of the indictment charged Salazar with having willfully and unlawfully caused the destruction of foreign passports, marriage and birth certificates, and INS applications on March 14 and 15, 2002; and Count 6 of the indictment charged him with having willfully and unlawfully caused the destruction of INS forms-797, INS receipt notices, INS rejection notices, and return mail on April 3 and 4, 2002. Salazar was employed at the CSC as a senior file room supervisor for the Service Center Operations Team ("SCOT"), an administrative unit made up of employees from three private companies under contract with the INS. As part of an effort to reduce the filing backlog at the CSC, Salazar and other members of SCOT from January to April 2002 shredded an estimated 90,000 INS documents, many of which were official public records required to be placed in

"A-files." "A-files" are the permanent record files of persons seeking to gain citizenship in the United States, which the INS is required to maintain for seventy-five years after the final adjudicative action of the applicant. Because we find that there is sufficient evidence in the record to support a reasonable inference that Salazar willfully and unlawfully caused the destruction of records or documents filed or deposited with a public office, we affirm his conviction.

As a preliminary matter, we find that Salazar's argument as to the lack of sufficient evidence proving that he willfully and unlawfully ordered the destruction of the specific documents charged in the indictment was not waived because it was made only "in passing" and without reasoned explanation, as the Government asserts. Salazar "specifically and distinctly" argued the issue in his opening brief, *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005), and he presented adequate authority to support his argument.

**[1]** A conviction under 18 U.S.C. § 2071(a) requires the Government to prove that Salazar willfully and unlawfully destroyed or caused another person to destroy or attempt to destroy any record, paper, document, or other thing filed or deposited in a public office or with any public officer of the United States. Salazar contends that the Government must also show that he willfully and knowingly destroyed the specific documents identified in the indictment. Because under 18 U.S.C. § 2071(a), "[t]he statutory requirement of willfulness is satisfied if the accused acted intentionally, with knowledge that he was breaching the statute," we reject this contention. *United States v. Simpson*, 460 F.2d 515, 518 (9th Cir. 1972) (alteration in original and internal quotation marks omitted). As we held in *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986) (citations omitted):

> [T]he government need not prove all facts charged in an indictment; instead, only enough facts to prove the essential elements of the crime must be demon-

strated at trial. Insofar as the language of an indict-
ment goes beyond alleging elements of the crime, it
is mere surplusage that need not be proved.

Had Congress included the specific documents destroyed as
an element of the offense, it would have created enforcement
problems because of the difficulty of identifying a shredded
document.

[2] Viewing the evidence in the light most favorable to the
prosecution, a rational trier of fact could have found Salazar
guilty beyond a reasonable doubt of the essential elements of
willfulness with respect to Counts 3 and 6 of the indictment.
*United States v. LeVeque*, 283 F.3d 1098, 1102 (9th Cir.
2002). First, INS procedures prohibited the shredding of "in-
terfiling" or "interfiling" backlog. "Interfiling" is a term used
to describe public records, such as naturalization certificates,
birth certificates, passports, photographs, return mail, and asy-
lum applications, which await placement in an alien's A-File.
Rose Marie Prince, Assistant Director for Records at the CSC,
testified that it was her understanding that "[i]nterfiling can-
not be shredded" according to INS policy in place at the time.
While there was testimony that the "interfiling" backlog may
have mistakenly contained other documents, such as computer
printouts or return receipt notices, that could be shredded,
Prince testified that there were no written instructions at that
time allowing the shredding of any documents and that the
written instructions in place forbade the shredding of "interfil-
ing" backlog. Both the Records Operation Handbook and the
SCOT standard operating procedure for processing "interfil-
ing" mandated that the clerk was to look in the system, iden-
tify the relating file and match the material to the file within
three days of receipt of the document. Prince testified that she
informed the SCOT supervisors that they were to seek guid-
ance from her staff if they had questions about INS policies
or procedures, but that neither she nor any member of her
staff received any inquiries regarding what documents were
permitted to be shredded.

**[3]** Second, Salazar had worked at the CSC since 1998 as a fileroom clerk, a Quality Control Inspector of the fileroom, a supervisor of the file transfer completion unit, and a Senior Supervisor for the fileroom, and therefore was familiar with the required procedures for processing "interfiling" into the A-files. Salazar's employment contract, which he initialed, stated that "Employee may have access to and use of, among other things, sensitive information belonging to the INS." In addition, Salazar's co-worker testified that she attended a training session with Salazar during which they were instructed to file or to hold onto interfiling and not to shred it. Furthermore, Prince testified that, under the terms of the contract with the INS, SCOT personnel were required to be familiar with INS policies and procedures and that SCOT standard operating procedures tracked the INS Records Operations Handbook. Beverly Wright, the Deputy Site Manager for SCOT, additionally confirmed that a SCOT employee would only be promoted to senior supervisor if he knew the standard operating procedure for the particular unit. Finally, Salazar himself went through the naturalization process and admitted on cross-examination that he expected the documents he filed during the process would be properly filed in his A-file and that it was important that the INS retain these records in case the computer system failed.

**[4]** Third, Salazar acted intentionally in causing the destruction of INS documents in the course of reducing the "interfiling" backlog that had mounted at the CSC. As one of the supervisors in charge of reducing the "interfiling" backlog, he directed his file room clerks to shred documents that were required to be filed in the proper A-file. One clerk, Bang Hua, testified that on April 3 and 4, 2002 Salazar directed him to transfer documents from buckets labeled "interfile" into boxes to be brought to another clerk, Hue Vo, for shredding. On April 4, 2002, INS personnel discovered Vo just as she was about to shred an I-589 Application for Asylum and then immediately proceeded to confront Salazar about the shredding. Both clerks testified that Salazar told them not to bother

double-checking the contents of the boxes to be shredded; however, when the INS personnel confronted Salazar, he told them that he had instructed Hua and Vo to sort, not shred. In addition, Salazar's supervisor, Dawn Randall, sent out an email on February 19, 2002 directing other supervisors not to "waste time doing searches" to locate the proper "A-file" for "interfiling," but instead to give them to Salazar for disposal. In his written statement, composed on April 14, 2002, just ten days after the April 4 confrontation, Salazar admitted that the "special searches"[1] assigned to him by Randall were a contemporaneous code name for the surreptitious shredding of "interfiling" backlog, which was performed by his night shift team so as to avoid INS oversight. Salazar further admitted that he and his group had increased the pace of the shredding to the point where management should have realized that the documents were being shredded rather than being properly filed in their respective A-files.

[5] Fourth, Salazar knew that he was acting unlawfully in causing the shredding of INS documents. Salazar admitted that had the Deputy Site Manager acted when she saw the abnormally high numbers in the production reports, "she could have prevented and stopped the shredding of Federal Documents." In his April 14 statement, he wrote that the shredding situation had escalated to the point where "[he] was feeling that [he] needed to talk to somebody, but [he] was afraid to lose [his] job." He further stated that he hoped "that at the end of this investigation the responsible people will be dealt with as the law indicates." One colleague of Salazar's testified that on April 12, 2002, Salazar told him that he believed the shredding was illegal, and another colleague testified that at some point prior to the shredding incident being exposed, Salazar stated that he believed that they were not

---

[1]Prince testified that the term "special searches," when properly used, did not signify the shredding of documents, but rather described a more in-depth computer-based and physical search for a file which was to be performed when the initial cursory search yielded no results.

supposed to be shredding the "interfiling." Finally, when first questioned by his superiors about the shredding, Salazar made false exculpatory statements. *See United States v. Perkins*, 937 F.2d 1397, 1402 (9th Cir. 1991) ("false exculpatory statements . . . properly could be considered as evidence of consciousness of guilt"). Therefore, we affirm Salazar's conviction.

**AFFIRMED.**

---

RAWLINSON, Circuit Judge, concurring:

I concur in the result.