**NEXUS HOLDINGS, INC., Plaintiff,**

v.

**DAFCAN FINANCE, INC., et al., Defendants.**

**No. 2:07–cv–1029.**

United States District Court, S.D. Ohio, Eastern Division.

Jan. 17, 2008.

Amelia A. Bower, Plunkett & Cooney PC, Columbus, OH, Merle Leslie Royce, II, Chicago, IL, for Plaintiff.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This case is a civil action among private litigants. After the parties settled their

differences, the United States became involved in the case because the settlement was made contingent upon the United States' willingness to release certain shares of stock and money being held in a brokerage account for which a seizure warrant had been issued. Plaintiff Nexus Holdings, Inc. filed a motion contesting the United States' right to block the transfer of the agreed-upon money and stock. The United States has agreed that the issue of its legal authority to maintain possession of the money and stock seized pursuant to the warrant may be litigated in this civil case. It has filed a legal memorandum supporting its position. This Opinion and Order resolves the issues raised by Nexus's motion and the United States' response by permitting all of the stock, and some of the money, to be released.

I.

The facts important to the Court's decision are not seriously disputed. Nexus entered into a financing agreement with one or more of the defendants. According to the agreement, Nexus would transfer title to 725,000 shares of a publicly traded company known as Sleep Holdings, Inc. to the defendants. In return, the defendants agreed to loan Nexus a sum of money. The loan was without recourse beyond the stock itself, but the defendants were not authorized to sell the stock unless Nexus defaulted on its own payments and was unable to cure that default within the time allowed in the agreement.

According to the complaint filed by Nexus, soon after the stock was transferred, and before any funds were disbursed to Nexus, the defendants sold all but 101,700 shares of the Sleep Holdings stock. However, they never funded the loan in any amount. Nexus sued for a return of its stock and other damages. The parties agreed to resolve the case if defendants returned to Nexus its remaining shares of stock, which were being held in a broker-

age account in the name of One Equity Corporation at Trading Direct, a division of York Securities, Inc., located in New York City, and also authorized the transfer of $810,000 from that account to Nexus. The day before the agreement was incorporated into a court order, however, this Court, through Magistrate Judge Kemp, issued a seizure warrant for the account. The warrant was based upon an application by the United States which alleged that the stock and money being held in the account constituted the proceeds of, or evidence of, criminal conduct on the part of the defendants, including conspiracy, mail fraud, wire fraud, financial institution of fraud, money laundering, interstate transportation in aid of racketeering, and interstate transportation of stolen property and securities. The seizure warrant also alleged that the property was subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A), 982(a)(1) and 982(a)(2).

According to Nexus's memorandum, when defendants sold the Sleep Holdings stock, the sale generated $642,392.47. There is approximately $1,100,000 in cash in the Trading Direct account. It is not clear where the balance of the funds came from, although an individual named Robert Schwartz also claims an interest in money contained in the account. Nexus asserts that Mr. Schwartz has agreed to the distribution of the additional money beyond the proceeds of the sale of the Sleep Holdings stock to Nexus. The United States has not contested any of these allegations, and the Court assumes them to be true for purposes of ruling on the motion.

II.

In applying for a seizure warrant for the Trading Direct account, the United States cited to 18 U.S.C. §§ 981 and 982 and 21 U.S.C. § 853(f). 18 U.S.C. § 981 describes types of property which are forfei-

table to the United States, including any property involved in a transaction violating certain federal statutes, including money laundering statutes, or any property traceable to such property. Section 982 contains authority for a court which imposes sentence upon a person convicted of such an offense to order that the person forfeit specified property to the United States. 21 U.S.C. § 853(f) is not mentioned in the memorandum filed by the United States, so the Court will dispense with any discussion of that statute.

Although there is statutory authority for the institution of civil and criminal forfeiture proceedings by the United States, that is not how this property was seized. Rather, the seizure warrant in this case was issued pursuant to the Court's authority under Fed.R.Crim.P. 41 to issue warrants for the search or seizure of persons or property upon a showing of probable cause that the property constitutes evidence of a crime, contraband, fruits of crime, or other items illegally possessed, property designed for use, intended for use, or used in committing a crime, or a person to be arrested or a person who is unlawfully restrained. Fed.R.Crim.P. 41(c).

Under Fed.R.Civ.P. 41(g), any person aggrieved by either an unlawful seizure of property or by the deprivation of property may move for the property's return. That rule further requires the Court to receive evidence on any factual issue necessary to decide the motion. If the Court grants the motion, it is authorized to impose reasonable conditions to protect access to the property and its use in later proceedings. 18 U.S.C. § 983(f) also provides for procedures to be used for the release of seized property, but it does not appear that those provisions are applicable here because the United States did not seize the property pursuant to 18 U.S.C. §§ 981 or 982. *Cf. United States v. Chambers*, 192 F.3d 374

(3d Cir.1999) (Rule 41(g) is the proper vehicle for returning property when no forfeiture has occurred). Section 983(f), if it were to apply, authorizes immediate release of seized property if the claimant has a possessory interest in the property, has sufficient ties to the community to provide assurance that the property will be available at the time of trial, the continued possession of the property by the government will cause substantial hardship to the claimant, and that hardship outweighs the risk of destruction, damage, loss, concealment, or transfer of the property. The section does not apply if the property is contraband, currency, or other monetary instruments unless the money constitutes the assets of a legitimate business, if the property is to be used as evidence of a violation of law, if it is particularly suited for use in illegal activities, or if it is likely to be used to commit additional criminal acts. The Court will evaluate the request for return of property under the appropriate statute or rule.

### III.

■ The United States' first argument against returning either the stock or the funds contained in the Trading Direct account to Nexus is that Nexus lacks standing to request the return of the property. Noting that standing is a threshold issue in every forfeiture case, the United States argues that in order for Nexus to have statutory standing to request return of the property, it must satisfy the definition of an "owner" of the property, set forth in 18 U.S.C. § 983(d)(6). Without directly addressing the shares of stock contained in the Trading Direct account, the United States argues that because Nexus was neither in possession of the money in that account nor exercised any dominion or control over it, and because it transferred title to its money to the defendants, it is nothing more than a general unsecured

creditor of the defendants. Because 18 U.S.C. § 983(d)(6)(B) excludes general unsecured creditors from the definition of "owner," the United States argues that Nexus has no statutory standing to pursue its claim.

▮▮ Because, in the Court's view, the account in question was seized under Rule 41, the Court must look to the language of that rule to determine whether Nexus has standing to request a return of the property. Under Rule 41(g), any person "aggrieved by ... the deprivation of property may move for the property's return." As a general matter, a party seeking return of property under Rule 41(g) must "demonstrate that he is entitled to lawful possession of the property...." *United States v. Van Cauwenberghe,* 827 F.2d 424, 433 (9th Cir.1987). Certainly, demonstrating an ownership interest is one way in which to have standing to file a motion under Rule 41(g). However, at least one court has analyzed the standing question as an Article III question. *See United States v. Comprehensive Drug Testing, Inc.,* 473 F.3d 915 (9th Cir.2006) (finding that an association had standing to file a Rule 41(g) motion on behalf of its individual members under *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Under any test, the Court concludes that Nexus has standing to seek return of the property in question).

First, it is undisputed that Nexus transferred the shares of stock in Sleep Holdings in a conditional rather than absolute fashion. The defendants were entitled to retain the shares of stock only if they funded the loan, and were entitled to sell the shares of stock only if Nexus defaulted on the loan. The undisputed facts before the Court indicate that the loan was never funded, so that the pre-condition for the defendants' retention of the stock was not met. Consequently, with respect to the stock remaining in the account, Nexus has a valid interest in the return of that stock which goes beyond the interest of a mere unsecured creditor in the assets of the defendants. For purposes of determining Nexus's standing, the Court need not determine that Nexus's claim to return of the stock is actually meritorious, but simply that Nexus has a claim which differentiates it from an unsecured creditor.

▮▮ The same analysis applies to the traceable proceeds of the stock which was allegedly wrongfully sold. Nexus has cited cases indicating that, under Ohio law, courts would likely impose a constructive trust over the proceeds of collateral sold in violation of a loan agreement. Such a claim is sufficient to confer standing on Nexus with respect to the proceeds of the sale.

▮▮ That leaves only the additional money in the account which did not come from the sale of Sleep Holdings stock. As to those funds, Nexus may well be an unsecured creditor. Its entitlement to the funds comes in one of two ways: either based upon its claim for general damages for breach of the loan agreement, or upon its claim to the proceeds as payable under the settlement agreement which it reached with the defendants. The former claim is insufficient to confer standing upon Nexus because it fails to satisfy the test of a possessory or ownership interest in the money. The same is true with respect to the latter claim. A party who does not have an ownership or possessory interest in funds in a bank account held in another's name cannot acquire such an interest simply by providing, in a settlement agreement, that those funds will be paid to the party as a part of the settlement. That is especially true here where the judgment entry reflecting the settlement was filed only after the government seized the funds in question. Consequently, the Court con-

cludes that Nexus is aggrieved by the deprivation of property only with respect to the stock remaining in the account and the proceeds of the sale of the stock which it transferred to defendants pursuant to the loan agreement. Having found standing with respect to that portion of the bank account, however, the Court is now required to determine whether the substantive prerequisites for an order returning the property to Nexus have been satisfied.

## IV.

 Although the Court has jurisdiction to entertain a Rule 41(g) motion when no criminal proceedings have been commenced, that jurisdiction is treated as civil equitable jurisdiction and the District Court "must exercise 'caution and restraint' before assuming jurisdiction." *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir.1993). Among the factors to be taken into account are whether the movant has a particular need for the property, whether he would be irreparably injured if it were not returned, and whether there is an adequate remedy at law to redress the grievance other than through an order returning property. *United States v. Kama*, 394 F.3d 1236 (9th Cir.2005); *see also Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975). Rather than utilizing traditional equitable considerations, however, some courts have simply weighed the interest of the government in holding the property against the owners' need for it in determining whether such a return is appropriate. *See United States v. 608 Taylor Avenue*, 584 F.2d 1297 (3d Cir.1978); *see also In re Search Warrant*, 2003 WL 22095662 (D.Del. Sept. 9, 2003). In arguing that Nexus is not entitled to the return of any of the property in the Trading Direct account, the United States cites only those factors set forth in 18 U.S.C. § 983(f), and presents two arguments under that statutory subsection: that the property is currency or monetary instruments and there-

fore the factors in § 983(f)(1) do not apply; or that its ongoing criminal investigation and/or a pending Grand Jury investigation demonstrates that the United States has a superior interest in the property. Although the Court believes that the United States' reliance on the provisions of § 983(f)(1) is inappropriate, the Court will also address those arguments.

Under the equitable test applicable to a Rule 41(g) motion, whether it involves applying traditional equitable factors or simply a balancing of the interests and needs of the parties, the Court concludes that Nexus is entitled to return both of its remaining shares of stock in Sleep Holdings and the money traceable to the improper sale of that stock. Nexus has presented an affidavit indicating that it will suffer irreparable injury if it does not regain possession of its stock and money. Given the current state of the proceedings, where the United States has not instituted forfeiture proceedings, Nexus clearly lacks an adequate remedy at law to recover its property. Further, although the United States has an interest in its ongoing criminal investigation, it is difficult to see how that interest is furthered by its retention of either the seized stock or the proceeds traceable to the sale of the stock delivered by Nexus to the defendants. The transactions through which the defendants obtained the stock, sold the stock, and obtained the proceeds are fully documented. The remaining shares of stock and the money itself have no independent evidentiary value. The return of that property to Nexus will not prevent the United States from presenting any relevant piece of evidence in a criminal prosecution or continuing its investigation. Thus, traditional equitable factors favor the return of the property. Using the reasonableness test, Nexus's need for the property clearly outweighs the government's minimal interest in continued retention of the property

for purposes of its ongoing investigation or criminal prosecution of the defendants.

■ Even if § 983 were applicable, the Court concludes that under the factors set forth in Subsection (f)(1), the return of the property is appropriate. The Court rejects the notion that it may not apply those factors because Section (f)(8) makes the prior section inapplicable if the property is currency or monetary instruments. That subsection also provides that currency or monetary instruments constituting the assets of a legitimate business may be returned under Section (f)(1). There appears to be no argument that Nexus is not a legitimate business or that the currency or stock are not assets of a legitimate business. To the extent that the United States might need the property at trial, although such need is unlikely, Nexus would appear to be available to provide either the property itself or evidence concerning the transfer of the property. The continued possession of the property pending the final outcome of a criminal prosecution, not yet initiated, will cause substantial hardship to Nexus, and that hardship outweighs any risk of destruction or damage to the property if it is returned to Nexus. As a result, the (f)(1) factors also clearly favor a return.

■ The United States makes only one additional argument in favor of its right to continue the seizure. On page eight of its memorandum, it asserts that "[i]n cases where the crime involves innocent victims ... asset forfeiture is the most effective means of recovering property that may be used to compensate victims." However, the United States has not instituted an asset forfeiture proceeding, and has made no evidentiary showing that there are additional innocent victims who might have a claim to either the Sleep Holdings stock or the proceeds traceable to the sale of that stock which would be superior to the claim of Nexus. Further, it has not cited any authority supporting the proposition that simply because there may be victims of a scheme, the United States is entitled to seize property in order that those victims might be compensated at a future date. Under these circumstances, the Court concludes that the United States has not made an adequate showing of an interest in the property sufficient to overcome Nexus's showing that, under either equitable principles applicable to a Rule 41(g) motion or the statutory standards set forth in 18 U.S.C. § 1983(f)(1), it is entitled to return of the property.

V.

Based upon the foregoing, the motion of Nexus Holdings, Inc., for return of property (# 11) is granted in part. The United States shall release, for purposes of having the property transferred to Nexus Holdings, Inc., its seizure warrant with respect to the shares of Sleep Holdings, Inc., and the Trading Direct account, as well as $642,392.47 in that account, and such warrant is hereby released to that extent. To the extent that the motion requests return of money in addition the proceeds of the sale of the stock, however, the motion is denied.