McKEOWN, Circuit Judge,
dissenting:
The Federal Power Act’s (“FPA”) delineation of FERC’s authority under § 206(b) is unambiguous: FERC lacks the “broad power under FPA § 206 to retroactively reset rates for all market participants.” Maj. Op. 837-38. From this rejection of FERC’s position, the end of the line seems clear — FERC’s orders exceeded its authority by resetting market rates retroactively, and the petition should be granted. Apparently not so. In a surprise twist ending, notwithstanding the plain language of the orders at issue and FERC’s litiga *843 tion position, the majority determines that FERC merely declared fair market clearing prices without actually attempting to “retroactively alter” these prices. Maj. Op. at 841-42. This semantic resolution is at odds with the record and basic principles of administrative law, and undermines the majority’s standing analysis, endangering the utilities’ claim to standing.
To understand why the majority’s conclusion takes a wrong turn, it is helpful to step back and track FERC’s bidding in this multi-year saga. FERC has stated throughout these proceedings that it has reset rates retroactively, and claims authority to do so under § 206(b) of the FPA. It argues that a contrary interpretation reads § 206(b) out of the statute entirely, because FERC must be able to retroactively reset rates to enable it to order refunds under § 206(b). A careful reading of FERC’s orders also shows that it sought to reset market rates. See, e.g., 127 FERC at ¶ 61,869 (“[T]he ordering of refunds by its very nature involves the resetting of rates in a past period.”). The majority’s effort to candy coat and recategorize what FERC said is inconsistent with the scope of our review of these administrative agency orders. In effect, the majority is saying “We know what your position is, we know what you argued on appeal, and we read what you wrote, but never mind, we just don’t think you said what you said.” That can’t be right. Although I join parts I-IV of the opinion, I cannot endorse the majority’s ultimate conclusion. I respectfully dissent.
A. Federal Power Act, § 206
Before turning to what FERC actually did do, it is important to recognize what FERC may do under the statute. Under FPA § 206, from which FERC’s (legal) power flows, FERC may “determine the just and reasonable rate ... to be thereafter observed and in force.” 16 U.S.C. § 824e(a). Subsection 206(b) outlines FERC’s retroactive authority. FERC must first “show that [a] rate” charged during a particular period “is unjust, unreasonable, unduly discriminatory, or preferential.” Upon making this showing, it “may order refunds of any amounts paid” over a particular period. § 206(b).
Under both sections, FERC’s first step is to “determine” the appropriate rate, and relatedly, that an alternative rate is unjust. At that point, FERC takes steps to implement the appropriate rate. Under § 206(a), FERC has the prospective authority to set the rate as the market rate “thereafter observed and in force.” Under § 206(b), FERC has the retroactive authority to order refunds based on its determination. As the majority correctly determines, the ratesetting authority is distinct from the refund authority and has prospective application only. Thus, under the statute, FERC may engage in three types of actions: the prospective and retroactive determination of a fair market price, prospective setting of market rates “in force” based on that price, and the retroactive ordering of refunds. Maj. Op. at 840-41. Nowhere in § 206 did Congress grant FERC the ability to retroactively reset market rates. FERC’s approach, which is to cherry pick a little from both subsections of the statute, creates an unprecedented and unauthorized option — retroactive resetting of rates.
B. FERC’s Orders
Having correctly read the statute, the majority holds that FERC was merely “calculating]” the just and reasonable market prices, rather than attempting to reset rates in the orders on appeal. Maj. Op. at 841. As the discussion of the collateral order doctrine suggests, FERC’s orders were hardly a model of clarity. Maj. Op. 836-38. However, a review of the *844 orders, followed by FERC’s litigation position, ' shows that FERC did more than passively determine just prices en route to ordering refunds for jurisdictional entities. It also sought to retroactively reset market rates for all entities through those orders, without the necessary legal authority. In so doing, FERC exceeded its power under the statute.
It is useful to trace the orders with care. From the outset, FERC has suggested that it sought to reset market rates. In its 2001 order, which we reviewed in Bonneville Power Administration v. FERC, 422 F.3d 908 (9th Cir.2005), FERC headlined the issue:
Our action here establishes a revised method for calculating the just and reasonable clearing prices to be applied in those markets for the period beginning October 2, 2000. This is pursuant to the Commission’s authority under FPA Section 206 to fix the just and reasonable rate. Our action thus revised the market clearing prices that all market participants previously agreed to accept for their sales.
96 FERC ¶ 61,120, at 61,512 (emphasis added).[1] In citing the same passage, the majority emphasizes only the sentence concerning “calculating the just and reasonable clearing prices,” Maj. Op. at 841;. this initial step does not vitiate FERC’s attempt to reset the prices for all participants. Indeed, the California parties contend that the 2001 Order so clearly retroactively reset rates that the petitioners should have challenged the rate reset at that time, and that this appeal is an impermissible collateral attack on the 2001 Order.
Although the quoted passage concerned a 2001 decision and petitioners here challenge only orders issued post-Bonneville, bygones cannot be bygones. The first of FERC’s post -Bonneville’s orders does not pose a problem. In October 2007, FERC “vacate[d] each of the Commission’s orders,” including the 2001 order at issue in Bonneville, “to the extent that they order non-public utility entities to pay refunds” in compliance with Bonneville. San Diego Gas & Elec. Co. v. Sellers of Energy & Ancillary Svcs., 121 FERCT 61,067, at 61,-352 (2007). Had matters ended there, the order may have passed muster.
However, at the instigation'of the California parties who had brought contract claims against the petitioners, FERC clarified its order the following month. Without mincing words, in its November 2007 Order, FERC explained:
We agree with the California Parties that the Commission inadvertently mischaracterized both its prior orders and the Ninth Circuit’s decision in Bonneville. [Establishing a just and reasonable rate is a prerequisite for ordering refunds. Accordingly, the Commission made clear that it was resetting the market clearing prices in the [2001] Refund Order:
Our action here establishes a revised method for calculating the just and reasonable clearing prices to be applied in those markets [the CAISO and PX wholesale electricity markets] for the period beginning October 2, 2000. This is pursuant to the Commission’s authority under FPA section 206 to fix the just and reasonable rate. Our action thus revises the market *845 clearing prices that all market participants previously agreed to accept for their sales.
San Diego Gas & Elec. Co. v. Sellers of Energy & Ancillary Svcs., 121 FERC ¶ 61,188, at 61,925 (2007) (emphasis in original). Nor was this unambiguous position merely a passing observation in the order. FERC performed an exegesis of Bonneville, claiming that what offended the court was only that FERC “went beyond resetting the market clearing prices.” Id. at 61,926 (emphasis in original) (citing Bonneville, 422 F.3d at 919). Thus, although the November Order did not explicitly amend the October Order to insert language regarding the resetting of market rates, id., the order went out of its way to reaffirm the vitality of language from the 2001 Order that stated that FERC retroactively reset market rates for all participants.
Faced with what they perceived as a turnabout by FERC, petitioners asked FERC to reconsider. Not only did FERC deny the request, but reemphasized that it had the power to reset market clearing prices, claiming more than once that the retroactive “application during that period of the new rate determined by the Commission to be just” was essential to its refund authority. 127 FERC ¶ 61,191, at 61,869 and 61,872 (2009); id. at ¶ 61,869 (“[T]he ordering of refunds by its very nature involves the resetting of rates in a past period.”). FERC did not conflate determining rates, resetting market prices based on those rates, and ordering refunds: as it explains, “[ajbsent our resetting of rates during the refund period, we would be unable to determine what amount would be in excess of a just and reasonable rate, and, therefore, we would be incapable of [ordering refunds].” Id. (emphasis added).
FERC does not explain why, after it “determine[s]” a rate to be just, it cannot simply order a refund, without retroactively applying the rate.[2] But the orders speak for themselves, and belie the majority’s claim that “the language of the Orders can and should be read more modestly.” Maj. Op. at 841.
Modesty aside, the majority’s approach sidesteps a plain reading of the orders. The majority quotes from a passage in the 2009 Order, in which FERC claimed that it was merely “establishing just and reasonable prices in markets by jurisdictional entities.” Maj. Op. at 834 (quoting 127 FERC at 61,874) (emphasis added). However, FERC proceeded to “reject” the distinction between “calculating rates for jurisdictional sellers” and “establishing a single just and reasonable price” for the market, and repeatedly held that its orders and statutory market-reset authority extended to “all spot market sales.” 127 FERC at 61,875, 61,872, 61,874 (emphasis added). FERC held that its prior orders would “necessarily affect all sales including sales by governmental entities and other non-public utilities.” Id. at 61,873.
Our ruling must begin and end with the language of the orders — unlike in a typical summary judgment appeal from a district court, we cannot affirm on any ground, nor may we substitute our view for that of the agency. The majority opinion “implies that if the administrative [agency] opinion consisted of two words — ‘[petition] denied’ — a persuasive [judicial opinion] could substitute for the missing agency reasoning. That is incorrect.” Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir.2010) (Posner, J.). Under long standing administrative *846 law principles, “the reviewing court should not attempt itself to make up for any deficiencies in the agency’s reasoning.” California Trout v. FERC, 572 F.3d 1003, 1021 (9th Cir.2009) (quoting Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947))) (alterations omitted). As the Court explained in Chenery, by displacing FERC’s reasoning with our own, we usurp its delegated authority, and “propel the court into the domain which Congress has set aside exclusively for the administrative agency.” 332 U.S. at 196, 67 S.Ct. 1760. The Chenery principle also ensures that agencies provide reasoned explanations for their decisions, which in turn, are the precondition for judicial deference in other administrative contexts. See id.; Spiva, 628 F.3d at 353; see generally Kevin M. Stack, The Constitutional Foundations of Chenery, 116 Yale L.J. 952, 1021 (2007).
Chenery requires us to hold FERC to its own words. Resolution of this appeal requires no nuanced interpretation of the orders, just allegiance to plain English. Because the FERC orders clearly seek to go beyond its statutory authority — retroactively resetting rates for all market sales — I would grant the petition.
C. FERC’s Argument on Appeal
Whatever other criticism is leveled at FERC’s approach, it cannot be faulted for a lack of consistency. On appeal, keeping faith with Chenery, FERC echoes its orders and maintains again and again in its brief that those orders “revise[d] the market clearing prices that all market participants previously agreed to accept for their sales,” and then seeks to defend this position. The majority itself recognizes the “argument on appeal that FERC’s power is more expansive,” allowing FERC to retroactively reset rates. Maj. Op. at 841. FERC also accepts the government utilities’ characterization of the dispute as involving retroactive rate resetting, arguing, in fact, that it engaged in this resetting and has the power to do so. In its brief, FERC actually disagreed with petitioners’ claim that FERC did not “reset the rates previously charged.” See 127 FERC at 61,870 (disagreeing with petitioners claim that “tariff changes are not backdated”). By adopting this position on appeal, FERC surely waives any argument to the contrary. Koerner v. Grigas, 328 F.3d 1039, 1048 (9th Cir.2003) ([A]n issue not “specifically and distinctly argue[d] in [a plaintiffs] opening brief,” is waived.).
In the face of FERC’s position, it seems odd indeed for the majority to craft a position that feven FERC does not endorse. In resolving this case in favor of FERC, the majority gives short shrift to basic tenets of administrative law and principles of appellate practice.
D. Standing
The majority’s position renders precarious its ruling as to the petitioners’ standing. The FPA “limits judicial review to those parties who have been ‘aggrieved by an order of the Commission.’ ” Port of Seattle v. FERC, 499 F.3d 1016, 1028 (9th Cir.2007)'(quoting 16 U.S.C. § 8251(b)). A party must also meet the constitutional standing requirements of injury-in-fact, redressability, and causation. Exxon Mobil Corp. v. FERC, 571 F.3d 1208, 1219 (D.C.Cir.2009) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).
Petitioners’ status as aggrieved parties under the Act, and the concreteness of their injury, all come down to whether FERC’s orders had a retroactive effect on the petitioners. If, however, FERC simply calculated just prices, without taking any action with respect to the petitioners, *847 the concreteness of their injury is open to question. The majority concedes as much: “FERC’s assertion on appeal that it reset the CalPX/ISO rates for all market participants, not only the entities over which it has jurisdiction, results in a sufficiently concrete injury to petitioners to afford them standing.” Maj. Op. at 835 (emphasis added).
Without this concrete injury, the majority’s ruling on standing is on shaky ground. In Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944), the Supreme Court held that the Federal Power Commission’s finding that certain past rates were unlawful was unreviewable. Id. at 618, 64 S.Ct. 281. The Commission had no authority to order refunds and could fix rates only prospectively, but nevertheless it argued that it could make findings as to the lawfulness of past rates. Id. The Court did not reach the merits of this contention because the findings were “only preliminary, interim step[s] towards possible future action — action not by the Commission but by wholly independent agencies,” and therefore standing was lacking. Id. at 619, 64 S.Ct. 281. Just as in Hope, the petitioners’ injury is not the result of any action by FERC; rather, it depends completely on how California state courts read the preclusive effect of FERC orders, which, as we have noted, are convoluted at best, and self-contradictory at worst. There is simply no daylight between this situation and one “where the order sought to be reviewed does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative” — or in this case, judicial — “action.” Maj. Op. 836 (citing Hope, 320 U.S. at 619, 64 S.Ct. 281). Because I read the FERC orders as imposing an injury directly upon the petitioners by retroactively resetting their market rates, I agree with the majority that there is no standing problem, but of course for a different reason.
Finally, the majority suggests that it is possible to ignore the fact that FERC engaged in impermissible rate resetting because FERC also engaged in permissible rate calculation. Maj. Op. 842. This “see no evil” approach is at odds with both Chenery as well as common sense. As our standing analysis shows, the petitioners challenge and are injured by the rate resetting; it is this action they challenge on appeal. We cannot ignore the point of the litigation simply because there is a silver lining to the otherwise dark cloud of ultra vires FERC action. Because the orders also violate FERC’s authority under § 206 of the FPAI respectfully dissent.

. It is true that “FERC sent contradictory signals in the same Order,’’ by noting that •"[i]n amending FPA Section 206, Congress did not give the Commission authority to modify unjust and unreasonable rates retroactively.” 96 FERC ¶ 61,120, at 61,505. Maj. Op. at 837. However, just because FERC contradicted itself as to whether it sought to retroactively reset rates, it 'does not follow that all FERC did was determine rates, as the majority holds.

. As the majority notes, FERC explained that it may “establish! 1 just and reasonable prices in markets by jurisdictional entities ... so that we may properly order refunds from public utilities.” 127 FERC at ¶ 61,874.