NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 25 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARK A. HANSON, | No. 18-15547 |
| Petitioner-Appellee, | D.C. No. 3:04-cv-00130-MMD-VPC |
| v. | |
| RENEE BAKER, Warden; ATTORNEY GENERAL FOR THE STATE OF NEVADA, | MEMORANDUM* |
| Respondents-Appellants. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, District Judge, Presiding

Argued and Submitted February 14, 2019
San Francisco, California

Before: McKEOWN, W. FLETCHER, and MURGUIA, Circuit Judges.

Renee Baker, Warden, and the Attorney General for the State of Nevada

(collectively, "the State") appeal the district court's judgment granting Mark

Hanson's habeas corpus petition under 28 U.S.C. § 2254.[1]

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1 In addition to the appeal, two motions are pending. The State's motion for leave to file an oversized brief is **GRANTED**. Hanson's request to file a sur-reply is **DENIED**.

On January 18, 1998, Tamara Smart—Hanson's 20-month old step-daughter—suffered a severe head injury while in Hanson's care. Tamara died from her injuries the next day.

Hanson was convicted of first-degree murder by child abuse for Tamara's death. At trial, Hanson contended that a fall from the front porch of the family's mobile home in Elko, Nevada, caused Tamara's injuries. The prosecution argued that physical abuse caused Tamara's injuries, and it relied almost exclusively on testimony from medical experts to prove its case. Those experts testified that Tamara's injuries were diagnostic of Shaken Baby Syndrome and that short falls cannot cause fatal head injuries, like the injuries Tamara suffered.

In the nearly two decades since Hanson's trial, the scientific integrity of the testimony provided by the State's experts has been undermined. Medical experts now agree, and documentary evidence proves, that short falls can cause fatal head injuries in children; experts also agree that injuries, like those suffered by Tamara, can be explained by causes other than abuse.

This sea-change in scientific consensus forms the basis for Hanson's federal habeas petition. After an evidentiary hearing, the district court held that Hanson had demonstrated that he was actually innocent within the meaning of *Schlup v. Delo*, 513 U.S. 298 (1995), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013). Specifically, the district court determined that, based on "new reliable evidence"

that was not presented at trial, *Schlup*, 513 U.S. at 324, Hanson had demonstrated that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 569 U.S. at 399.

Because Hanson satisfied the high threshold necessary to pass through the actual innocence gateway under *Schlup* and *McQuiggin*, the district court proceeded to address on the merits the otherwise-procedurally defaulted claims in Hanson's habeas petition. Ultimately, the district court granted Hanson relief on Ground Ten—that the introduction of flawed expert testimony at trial undermined the fundamental fairness of Hanson's entire trial, in violation of his right to due process.

On appeal, the State does not contest the district court's finding that Hanson has satisfied the gateway "actual innocence" standard under *Schlup* and *McQuiggin*. The State also has not explicitly contested the district court's conclusion on the merits of Ground Ten.

Instead, the State mounts two procedural challenges to the district court's decision, arguing: (1) the district court incorrectly determined Ground Ten of Hanson's petition was procedurally defaulted and therefore technically exhausted, because Nevada's state procedural bars have an exception for actual innocence, similar to the federal *Schlup* exception; and (2) the district court erred by considering evidence adduced at Hanson's gateway innocence hearing to decide

3

the merits of Ground Ten.

We review the district court's order granting or denying a habeas petition de novo. *Gonzalez v. Duncan*, 551 F.3d 875, 879 (9th Cir. 2008). The district court's factual findings are reviewed for clear error. *Reynoso v. Giurbino*, 462 F.3d 1099, 1108-09 (9th Cir. 2006).

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

**1.** The district court correctly concluded that Ground Ten was procedurally defaulted and therefore exhausted.

Where a petitioner's claims are procedurally defaulted in state courts, those claims are also exhausted because "there are no state remedies any longer 'available.'" *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (quoting 28 U.S.C. § 2254(b)). Even "where a federal habeas petitioner raises a claim which has *never* been presented in any state forum, a federal court may properly determine whether the claim has been procedurally defaulted under state law." *Harris v. Reed*, 489 U.S. 255, 269 (1989) (O'Connor, J., concurring) (emphasis in original).

If Hanson attempted to raise Ground Ten now, in a *third* state habeas petition, the Nevada courts would treat that petition as procedurally barred; the Nevada Supreme Court already concluded Hanson's *second* state habeas petition, filed over a decade ago, was untimely, successive, and barred by laches. Indeed, the State recognizes as much. The State insists, however, that the availability of an exception

4

to those procedural bars for actual innocence, *see Pellegrini v. Nevada*, 34 P.3d 519, 537 (Nev. 2001), requires Hanson to return to state court before Ground Ten can be considered exhausted.

This argument fails because Hanson already presented his actual innocence argument to the Nevada state courts.[2] The district court found that the "record reflects" that "Hanson argued in state court that he is actually innocent" in "an attempt to overcome procedural bars in state court." That finding is not clearly erroneous. *Reynoso*, 462 F.3d at 1108-09. In the state district court, Hanson presented the affidavit of Dr. Ophoven—a medical expert who would later testify, consistent with her state district court affidavit, at Hanson's hearing in federal court—and argued that her affidavit provided "new evidence" that would "support a motion for a new trial." In the Nevada Supreme Court, Hanson's pro se filings argued that he was actually innocent under *Schlup* and *Pellegrini*, that Dr. Ophoven's affidavit supported his claim of innocence, and that the intervening changes in scientific understanding rendered obsolete the testimony used to convict him. Indeed, Hanson pleaded with the Nevada Supreme Court to "please look at all the documents that clearly show evidence of actual innocence, which is a

---

[2]    Because Hanson *did* present his actual innocence arguments to the Nevada state courts, we need not decide whether Hanson was *required to* do so in order to exhaust his claims.

miscarriage of justice," and attached the argument and affidavit from state district court to support his claim of actual innocence.

Although the Nevada courts declined to address Hanson's actual innocence argument, Hanson afforded the state courts with the necessary opportunity to consider the argument. *See Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003) (exhaustion requires presentation of the "operative facts" and "legal theory"). Accordingly, Hanson is not required to file a third habeas petition, and present his actual innocence argument *again*, in order to exhaust Ground Ten. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (noting that exhaustion does not "require prisoners to file repetitive petitions").

The district court therefore correctly determined that Ground Ten was procedurally defaulted and exhausted.

2.      The district court did not err in considering evidence adduced at Hanson's hearing on his gateway innocence claim to decide the merits of Ground Ten.

Section 2254(e)(2) limits the discretion of federal district courts to hold evidentiary hearings on a habeas petitioner's claims in certain circumstances. *See* 28 U.S.C. § 2254(e)(2). However, § 2254(e)(2)'s opening clause limits its application to those instances where a prisoner "has *failed to develop* the factual basis of a claim in State court proceedings." *Id*. (emphasis added). The Supreme Court has

6

interpreted this language to require some showing of a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). If a prisoner acts diligently in attempting to develop the factual basis for a claim, § 2254(e)(2)'s limitations do not apply. *Id.* at 437.

Hanson attempted to develop the factual basis for his actual innocence claim—which, critically, would have included all the evidence necessary to support his claim under Ground Ten—in the state district court. Hanson requested an evidentiary hearing, and he sought additional funds in order to hire experts to testify at the hearing. However, at the State's urging, the state district court vacated the evidentiary hearing, dismissed the petition on procedural grounds, and denied the request for additional funds to hire experts. After the dismissal of the petition, Hanson's court-appointed counsel moved to withdraw. But, even then, counsel requested that Hanson be provided new counsel to bring a motion for a new trial based on the changed scientific evidence. That request, too, went unanswered.

Hanson therefore made a "reasonable attempt, in light of the information available at the time, to investigate and pursue" his claims. *Id.* at 435. Therefore, § 2254(e)(2)'s limitations do not apply, and the district court did not err in considering

the evidence adduced at Hanson's evidentiary hearing to decide the merits of Ground Ten.[3]

3.    The district court's order granting a conditional writ of habeas corpus to Mark Hanson is **AFFIRMED**. The district court shall order Hanson released from custody within sixty days of the issuance of the mandate, unless, within that sixty-day period, the State files a written notice in the district court of its election to retry Hanson, and the State thereafter, within sixty days after the filing of that notice, actually commences Hanson's retrial.

**AFFIRMED**.

---

[3]    We need not address the State's suggestion that the district court improperly relied on *Gimenez v. Ochoa*, 821 F.3d 1136 (9th Cir. 2016), to grant relief on Ground Ten. The State, correctly, did not argue that this provided an independent basis for reversing the district court. And, under any circumstances, the argument is without merit. *See Gimenez*, 821 F.3d at 1143 (noting courts, including the Supreme Court, "have long considered arguments that the introduction of faulty evidence violates a petitioner's due process right to a fundamentally fair trial—even if that evidence does not specifically qualify as 'false testimony.'").